# 24-

## United States Court of Appeals

### *for the*

## Second Circuit

---

DEBMAR-MERCURY LLC, IRA BERNSTEIN, MORT MARCUS,

*Petitioners,*

— v. —

KELVIN HUNTER,

*Respondent.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 1:22-CV-01687 (PGG),
HONORABLE PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE

---

## PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(B)

---

JAMES H. HULME
ARENTFOX SCHIFF LLP
*Attorneys for Petitioners*
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@afslaw.com

CP COUNSEL PRESS    (800) 4-APPEAL • (326764)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioners Ira Bernstein, Mort Marcus, and Debmar-Mercury, LLC hereby certify: (1) Debmar-Mercury, LLC is jointly owned by its members Lions Gate Entertainment Inc. (a Delaware corporation with its principal place of business in California) and Debmar Studios Inc. (a California corporation with its principal place of business in California); (2) both entities are wholly owned subsidiaries of Lions Gate Entertainment Corp., which is a publicly traded company; and (3) no publicly held corporation owns 10% or more of Lions Gate Entertainment Corp.'s stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ..................................................................1

QUESTION PRESENTED ......................................................................3

RELIEF SOUGHT ..........................................................................3

STATEMENT OF FACTS .....................................................................4

    A.    Litigation Background........................................................4

    B.    The Motion to Dismiss.......................................................5

    C.    The District Court's Certification Pursuant to Section 1292(b) ...........8

STANDARD FOR INTERLOCUTORY REVIEW...................................................8

ARGUMENT ...............................................................................9

    I.    This Court Should Grant Review as to Whether the Definition of Marital Status Under the NYCHRL Protects an Employee's Marital Status in Relation to a Particular Person .............9

        A.    The Order Involves Controlling Questions of Law and an Immediate Appeal Would Advance the Ultimate Termination of the Litigation......................................................9

        B.    There Exists a Substantial Ground for Difference of Opinion...................................................................11

            1.    There Is Conflicting Authority on the Question Presented.......................................................12

            2.    *Morse* Erroneously Analyzed a Difficult Question of First Impression .........................................14

        C.    Cases Requiring Similar Construction of the NYCHRL Are Likely to Continue to be Presented to District Courts in This Circuit................................................19

ii

D.    Certification of the Question to the New York Court of Appeals Is Warranted ................................................................20

CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    19 Civ. 10067, 2023 WL 4249356 (S.D.N.Y. June 29, 2023) .....................11

*Chauca v. Abraham*,
    841 F.3d 86 (2d Cir. 2016) ........................................................ 13, 19, 20, 21

*Chauca v. Abraham*,
    89 N.E.3d 475 (N.Y. 2017) ............................................................ 18, 20, 21

*Christoforou v. Cadman Plaza N., Inc.*,
    No. 04 CV 08403, 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009) ....... 2, 12, 14

*City of New York v. Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010) .........................................................................21

*Doe v. Bloomberg, L.P.*,
    167 N.E.3d 454 (N.Y. 2021) ........................................................................18

*Exch. Comm'n v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832, 2023 WL 6445969 (S.D.N.Y. Oct. 3, 2023) ..................12

*Gokhberg v. PNC Bank, Nat'l Ass'n*,
    No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021), *aff'd*,
    No. 21-222-cv, 2022 WL 288174 (2d Cir. Feb. 1, 2022).................. 2, 12, 14

*Hunter v. Debmar-Mercury LLC*,
    No. 22 Civ. 1687 (PGG), 2024 WL 64768 (S.D.N.Y. Jan. 5, 2024) ..........1, 5

*Hunter v. Debmar-Mercury LLC*,
    No. 22 Civ. 1687, 2023 WL 5671527 (S.D.N.Y. Sept. 1, 2023) ...................1

*In re 650 Fifth Ave.*,
    No. 08-cv-10934, 2012 WL 363118 (S.D.N.Y. Feb. 2, 2012).......................10

*In re Air Crash Off Long Island, N.Y., on Jul. 17, 1996*,
    27 F. Supp. 2d 431 (S.D.N.Y. 1998) ..............................................................9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..........................................................11

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996) ...........................................................................12

*In re S. African Apartheid Litig.*,
    624 F. Supp. 2d 336 (S.D.N.Y. 2009) .............................................................11

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds*,

*Levin v. Yeshiva University*,
    96 N.Y.2d 484 (2001)................................................... 5, 12, 14, 17

*Makinen v. City of N.Y.*,
    857 F.3d 491 (2d Cir. 2017) ................................................. 19, 21

*Makinen v. City of N.Y.*,
    86 N.E.3d 514 (N.Y. 2017) .............................................................18

*Manhattan Pizza Hut, Inc. v. N.Y. State Human Rights Appeal Bd.*,
    415 N.E.2d 950 (N.Y. 1980) ......................................................7, 8

*Morse v. Fidessa Corp.*,
    165 A.D.3d 61 (1st Dep't 2018) ........................................... *passim*

*Owens v. Centene Corp.*,
    22-2765, 2023 WL 5970954 (2d Cir. Sept. 14, 2023)........................... *passim*

*Owens v. Centene Corp.*,
    No. 20-CV-118, 2022 WL 4641129 n.8 (E.D.N.Y. Sept. 30, 2022).............14

*Syeed v. Bloomberg L.P.*,
    58 F.4th 64 (2d Cir. 2023) ................................................. 13, 19, 21

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020), *aff'd*, 12 F. 4th 135
    (2d Cir. 2021)...................................................................10

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020), *aff'd*, 12 F. 4th 135
    (2d Cir. 2021).............................................................. 10, 11

*Zakrzewska v. New School*,
    574 F.3d 24 (2d Cir. 2009) .............................................................20

*Zakrzewska v. New School*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009) ...................................................2, 20

**Statutes & Other Authorities:**

28 U.S.C. § 1292(b) ........................................................... *passim*

Fed. R. App. P. 5(a) ...............................................................1

Fed. R. Civ. P. 12(b)(6).........................................................3

Local Rule 27.2 .....................................................................20

Black's Law Dictionary (11th ed. 2019), *Marital Status* ...................................7, 15

N.Y. Stat. Law § 75 (McKinney)...........................................13

N.Y. Stat. Law § 146 (McKinney).........................................19

## <u>PRELIMINARY STATEMENT</u>

Pursuant to 28 U.S.C. § 1292(b) and FRAP 5(a), Petitioners, Ira Bernstein, Mort Marcus, and Debmar-Mercury, LLC, respectfully petition for permission to appeal the September 1, 2023 Order of the Southern District of New York denying Petitioners' motion to dismiss (the "Order"). *See Hunter v. Debmar-Mercury LLC*, No. 22 Civ. 1687, 2023 WL 5671527 (S.D.N.Y. Sept. 1, 2023) (<u>Ex. A</u>). On January 5, 2024, the district court granted Petitioner's motion for certification of appeal and stayed proceedings pending the decision of this Court (the "Certification Order"). *Hunter v. Debmar-Mercury LLC*, No. 22 Civ. 1687 (PGG), 2024 WL 64768 (S.D.N.Y. Jan. 5, 2024) (<u>Ex. B</u>).

Respondent's single cause of action hinges on a question of first impression for this Court and the New York Court of Appeals ("NYCOA"): whether protection based on "marital status" under the New York City Human Rights Law ("NYCHRL") is understood as one's status of being married, divorced, separated, or single, or whether it also extends to one's "status" of being married *to a particular person*. Respondent, the former husband of talk show host Wendy Williams (who initiated divorce proceedings against him in 2019), bases his claim against Petitioners solely on the latter, more expansive definition of "marital status." Determining the correct scope of the protected "marital status" class will definitively resolve a question that affects millions of New York employees and their employers.

In addressing this question, the district court reluctantly determined that it was constrained to follow a decision of New York State's First Department in *Morse v. Fidessa Corp.*, 165 A.D.3d 61 (1st Dep't 2018), which endorsed the "marital status" definition on which Respondent now relies. Even so, the district court unequivocally stated that it disagreed with *Morse*'s holding, indicating substantial grounds for difference of opinion among jurists on the issue. Indeed, other courts in the Southern District and Eastern District have ruled that "marital status" under the NYCHRL is limited to the condition of being married or unmarried and does *not* protect a "status" of being married to a particular person. *Gokhberg v. PNC Bank, Nat'l Ass'n*, No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021), *aff'd*, No. 21-222-cv, 2022 WL 288174 (2d Cir. Feb. 1, 2022), and *Christoforou v. Cadman Plaza N., Inc.*, No. 04 CV 08403, 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009). This issue, and similar issues requiring construction of the NYCHRL, are likely to continue to tax the district courts' dockets absent guidance from this Court or the NYCOA. *See Zakrzewska v. New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) ("Employment discrimination cases make up substantial portions of the dockets of the district courts in our Circuit" due to "[t]he apparent tendency to press claims under the state and city anti-discrimination laws.").

Accordingly, in granting Petitioners' motion for certification of appeal under 28 U.S.C. § 1292(b), the district court agreed that immediate appellate review of this

controlling question of law, as to which substantial differences of opinion exist, would materially advance the ultimate termination of this litigation. *See* Ex. B. Moreover, the district court correctly observed that this case may be an appropriate vehicle for this Court to certify the question of "marital status" construction to the NYCOA, as the Court recently has done in other cases requiring clarification of the statute's protections. Petitioners accordingly urge this Court to accept immediate appeal and either reverse the district court's Order or certify this important question to the NYCOA.

## QUESTION PRESENTED

Whether the protected category of "marital status" under the NYCHRL extends to an employee's status of being married to a particular person.

## RELIEF SOUGHT

Petitioners request permission to take an immediate appeal, seeking a ruling on the scope of "marital status" discrimination and reversal of the September 1st Order denying their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, certification by this Court of the question presented to the NYCOA.

## STATEMENT OF FACTS

### A. Litigation Background

Petitioners are the television studio Debmar-Mercury and its founders responsible for producing the popular daytime talk show *The Wendy Williams Show*. ECF No. 1 ¶¶ 13-14, 23-24.[1] In 2007, Debmar-Mercury entered into a contract with Wendy Williams (hereinafter "Ms. Williams") to create the show, with Ms. Williams to serve as the show's host. *Id.* ¶¶ 16, 18.

Respondent, now Ms. Williams' former spouse, served as an Executive Producer on the show from its inception until April 2019. *Id.* ¶¶ 25, 28, 29. Respondent states that, as Executive Producer, he acted as the intermediary between Ms. Williams and Petitioners, managed Ms. Williams' day-to-day schedule, and maintained Ms. Williams' professional and personal wellbeing. *Id.* ¶¶ 26-27.

According to the Complaint, on April 11, 2019, Ms. Williams served him with notice of her intent to divorce him (*id.* ¶ 33) and that on April 18, 2019, Petitioners provided him with notice of his termination from *The Wendy Williams Show*. *Id.* ¶ 34. Respondent further alleges that, prior to his termination, Petitioners had performed an investigation into his conduct. *Id.* ¶ 54.

---

[1] For the purpose of this petition only, and except as otherwise noted herein, the pleaded allegations of fact in the Complaint are deemed to be true.

Respondent now brings a single cause of action for marital status discrimination in violation of the NYCHRL, asserting that his termination was due to the then-pending dissolution of his marriage to Ms. Williams. The district court had jurisdiction because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship among the parties.[2]

### B. The Motion to Dismiss

Petitioners moved to dismiss the Complaint for failure to state a claim, arguing that the NYCHRL's prohibition against "marital status" discrimination does not extend to a person's marital status in relation to a particular individual. ECF No. 32. In support of this argument, Petitioners observed that, *inter alia*, the last time the New York Court of Appeals interpreted the meaning of "marital status" under the NYCHRL, in *Levin v. Yeshiva University*, the court held that the NYCHRL protected only "marital status as such," rather than "the existence of the complainant's [] relationship – or absence thereof – with another person." ECF No. 32 at 5; 96 N.Y.2d 484, 490 (2001).

---

[2] Respondent is a New York resident, and Petitioners Bernstein and Marcus are California residents. *Id.* ¶¶ 7, 11. Although the Complaint misstates that Bernstein and Marcus are the owners of Petitioner Debmar-Mercury, LLC (*id.* ¶ 10), Debmar-Mercury, LLC is owned jointly by Lions Gate Entertainment Inc. (a Delaware corporation with its principal place of business in California) and Debmar Studios Inc. (a California corporation with its principal place of business in California).

In opposition, Respondent asserted that *Levin* has been overruled by the New York City's Civil Rights Restoration Act of 2005 ("the Act"), which amended the NYCHRL to add "partnership status" as a protected category in addition to "marital status." ECF No. 35 at 7. The Act also amended the NYCHRL's liberal-construction provision, providing that the statute is to be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof". *Id.* at 1. Principally, Respondent relied on the First Department's decision in *Morse v. Fidessa Corp.*, 165 A.D.3d 61 (1st Dep't 2018), which construed the Act as extending to a person's marriage to a particular individual. *Id.* at 68.

In response, Petitioners asserted that, according to persuasive evidence, the *Morse* decision does not accurately reflect New York law or the intent of the New York City Council ("NYC Council") that promulgated the Act, including that: (i) two federal district court decisions, contrary to *Morse*, apply *Levin*'s understanding of "marital status"; (ii) the Act's legislative history reveals that the NYC Council did not intend to change the definition of "marital status," given that the Council rejected two draft amendments that would have adopted the expansive construction later advanced in *Morse*; (iii) *Morse*'s application of the liberal-construction provision is inconsistent with NYCOA precedent; (iv) the *Morse* construction contradicts the common understanding of "marital status," which refers to whether a person is married; and (v) *Morse*'s construction would afford *lesser protection* for

6

"partnership status" (which is defined in the NYCHRL and does not extend to one's status *in relation to* another person) than for "marital status" (which is undefined in the statute), a discriminatory result that must be avoided. ECF No. 34.

The district court denied Petitioners' motion, declining to disregard *Morse*'s holding on the question presented. Ex. A at *8.

Nevertheless, the court expressly identified four egregious errors with *Morse* that would support finding that the decision was wrongly decided. *Id*. at 15 n.5. *First*, as to the ordinary meaning of "marital status," the district court pointed to authority that this term traditionally refers to "[t]he condition of being single, married, legally separated, divorced, or widowed." *Id.* (quoting *Marital Status*, Black's Law Dictionary (11th ed. 2019)).[3] *Second*, the legislative purpose of the NYCHRL's relevant sections, which are "focused on discriminatory animus directed at particular groups or classes of people," rather than individual relationships, further discredits an expansive understanding of "marital status." *Id. Third*, the court noted that *Morse* "misconstrues which portions of *Levin* were abrogated by the [] Act and why," because the decision "errs in concluding that the City Council's abrogation of *Levin* implies an intent to create a cause of action for marital status discrimination based

---

[3] *Accord Manhattan Pizza Hut, Inc. v. N.Y. State Human Rights Appeal Bd.*, 415 N.E.2d 950, 953 (N.Y. 1980) ("when one is queried about one's 'marital status', the usual and complete answer would be expected to be a choice among 'married', 'single', etc.").

on the identity of the complainant's spouse." *Id. Fourth*, the court acknowledged that the Act's legislative history reveals that the NYC Council twice rejected a proposed expanded definition of "marital status," which would have included the exact construction that Respondent relies upon. *Id.*

### C. The District Court's Certification Pursuant to Section 1292(b)

Petitioners subsequently sought certification of the Order for interlocutory review because it raised controlling questions of law as to which substantial differences of opinion exist and the resolution of which would materially advance the ultimate termination of this litigation. ECF Nos. 47, 48. The district court granted certification of the September 1, 2023 Order on those grounds. *See* Ex. B. Significantly, the district court noted that the proper interpretation of "marital status" as used in the NYCHRL is an issue of first impression in the Second Circuit and the NYCOA, and thus "presents a sufficiently plausible candidate for a certified question that an interlocutory appeal cannot be deemed futile." *Id*. at *5, 7.

Petitioners now seek permission to appeal to this Court.

### STANDARD FOR INTERLOCUTORY REVIEW

Under 28 U.S.C. § 1292(b), this Court has discretion to permit an interlocutory appeal from the order of a district court when the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate

termination of the litigation." 28 U.S.C. § 1292(b). The district court certified that its Order satisfies each of these requirements.

## ARGUMENT

**I.      This Court Should Grant Review as to Whether the Definition of Marital Status Under the NYCHRL Protects an Employee's Marital Status in Relation to a Particular Person.**

> **A. The Order Involves Controlling Questions of Law and an Immediate Appeal Would Advance the Ultimate Termination of the Litigation.**

The first and third elements of § 1292(b) are met for the simple reason that, if Respondent's preferred construction of "marital status" is erroneous, this litigation is entirely resolved. The district court agreed. Ex. B at *2-3, 5-6.

Respondent concedes that the first element (controlling question of law) is satisfied. ECF 49 at 4. A question of law is controlling if reversal of the district court's Order would terminate the action. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (2d Cir. 1991). Because this entire action rests on whether "marital status" under the NYCHRL includes an employee's marital status in relation to a particular person, a reversal of the court's Order would result in the termination of this action. *See In re Air Crash Off Long Island, N.Y., on Jul. 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998) (certification is especially appropriate where the issue involves "a purely legal question about which there are no triable issues of fact.").

This posture equally satisfies the third certification element (the potential to

advance the ultimate termination of the litigation), which is "closely connected to the question of whether the appeal involves a controlling question of law". *In re 650 Fifth Ave.*, No. 08-cv-10934, 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012); *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. 2020) (granting certification under Section 1292(b) where "[r]eversal of this Court's Opinion & Order would end this case and would materially advance the ultimate termination of the litigation"), *aff'd*, 12 F. 4th 135 (2d Cir. 2021). Moreover, "in considering this factor, courts must consider the institutional efficiency of both the district court and the appellate court." *Tantaros*, 465 F. Supp. 3d at 392 (citation omitted). Here, resolving the question presented is particularly salient for the efficiency of federal district and appellate courts in cases that arise solely out of the NYCHRL because there is no similar claim that can be brought under any federal or other New York state law. If *Morse* was wrongly decided, then federal courts will likely never again have to adjudicate a claim alleging discrimination against one's marital status "in relation to" another.

Although Respondent nominally disputed that an interlocutory appeal may advance the termination of this case, the district court correctly rejected that argument. Respondent asserted that, to the extent an appeal may take longer to resolve than a full trial at the district court, the ultimate-termination element is not met. ECF 49 at 12-13. But this position ignores the controlling standard for this

element: whether the outcome of the appeal could end the litigation. *See Tantaros*, 465 F. Supp. 3d at 392. And, as the district court held, the cases cited by Respondent on this issue do not support his position. Ex. B at *5. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 Civ. 10067, 2023 WL 4249356, at *18 (S.D.N.Y. June 29, 2023) (appeal would not have advanced ultimate termination of the litigation because a reversal would have restored several dismissed claims needing to be litigated); *In re S. African Apartheid Litig.*, 624 F. Supp. 2d 336, 340-343 (S.D.N.Y. 2009) (defendants failed to establish any of the § 1292(b) elements, including a controlling issue of law and substantial grounds for disagreement).[4] Respondent's cited cases are inapposite, as a reversal of the district court's Order here would end this litigation.

Accordingly, the first and third certification elements are met in this action.

## B. There Exists a Substantial Ground for Difference of Opinion.

A substantial ground for difference of opinion exists where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit. *Klinghoffer*, 921 F.2d at 24; *accord Tantaros*, 465 F. Supp. 3d at 391. In assessing these prongs, the court looks to whether

---

[4] *See also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 538-39 (S.D.N.Y. 2014) (no controlling issue of law, as the allegations of several classes raised discoverable "highly fact-intensive" and "unique" issues regardless of the outcome on appeal).

11

"substantial doubt [exists] that the district court's order was correct." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2023 WL 6445969, at *5 (S.D.N.Y. Oct. 3, 2023) (citations omitted). *Accord In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). Here, both prongs demonstrating substantial ground for difference of opinion are satisfied.

### 1. There Is Conflicting Authority on the Question Presented.

The district court correctly found that conflicting authority exists with respect to the question presented. Ex. B at *4-5. The decisions in *Gokhberg v. PNC Bank, National Association*, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021) and *Christoforou v. Cadman Plaza North, Inc.*, 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009) directly conflict with *Morse* on this exact issue. Both *Gokhberg* and *Christoforou* applied *Levin v. Yeshiva University*, 96 N.Y. 2d 484 (2001) to hold that marital status discrimination is limited to discrimination against those who are married or unmarried and does not apply to discrimination based on being married to a particular person. *Gokhberg*, 2021 WL 421993, at *6; *Christoforou*, 2009 WL 723003, at *7 n.8.

In briefing this issue to the district court, Respondent erroneously asserted that *Gokhberg* and *Christoforou* do not "conflict" with *Morse* because they do not cite that case and *Christoforou* predates the most recent amendments to the NYCHRL, passed in 2016. ECF No. 49 at 6. But this specious position cannot avoid a finding

12

of conflicting authority because an interlocutory appeal is equally justified when conflicting authorities do *not* reference one another. *E.g.*, *Chauca v. Abraham*, 841 F.3d 86, 94-95 (2d Cir. 2016) (on interlocutory appeal of NYCHLR case, district courts that had ruled on the relevant question did *not* cite or discuss the one conflicting district-court opinion, despite post-dating it); *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 69-70 (2d Cir. 2023) (one court's analysis of the NYCHRL arguably conflicted with subsequent decisions, even though those decisions did not note or cite any conflict; conflict supported interlocutory appeal to Second Circuit and certification of the question for the NYCOA). Thus, Respondent's suggested test for detecting a "conflict" does not exist. Moreover, the 2016 amendments to the NYCHRL did not affect any provision relevant to this case. The marital status (and partnership status) provisions were unaltered, and the liberal-construction provisions of the 2005 Act and the 2016 amended version are *identical* excepting word replacements with no decipherable difference: *i.e.*, replacing the word "State" with "state" and "comparably-worded" with "worded comparable". *Compare* ECF No. 33-5 at 13 *and* ECF No. 36-1 at 1-2.[5]

---

[5] Respondent also has relied on a comment of the statute's Introducer, Brad Lander, supporting liberal construction of the NYCHRL's provisions, including marital-status protection. ECF No. 48 at 8-9. Lander's statement is irrelevant, as a legislature "has no controlling power to retroactively declare that an existing statute shall receive a given construction when such a construction is contrary to that which the statute would ordinarily have received." N.Y. Stat. Law § 75 (McKinney). Nor does

For these reasons, the district court correctly found that *Gokhberg* and *Christoforou* establish conflicting authority on the question presented. Ex. B at *4-5. The "substantial ground" element of § 1292(b) is met on this basis alone.

### 2. *Morse* Erroneously Analyzed a Difficult Question of First Impression.

In addition, the question presented has proven difficult to resolve and has not been resolved by this Court or the NYCOA. This is another independent ground that satisfies this element.

As the district court found, the question here is a matter of first impression. Ex. B at *5. Following the 2005 passage of the Act, neither this Court nor the NYCOA have resolved whether the understanding of marital status advanced in *Levin* remains authoritative. Moreover, this Court recently confronted, but did not resolve, a novel interpretation of *Morse* in *Owens v. Centene Corp.*, where the plaintiff claimed that "the NYCHRL's prohibition against discrimination based on an employee's perceived marital or partnership status extends to perceived romantic relationships" generally. No. 22-2765, 2023 WL 5970954, at *1 n.1 (2d Cir. Sept. 14, 2023). The plaintiff principally relied on *Morse* as persuasive authority supporting the proposed expanded definition. *See Owens v. Centene Corp.*, No. 20-CV-118, 2022 WL 4641129, at *4 n.8 (E.D.N.Y. Sept. 30, 2022). While this Court

---

Lander's general support for liberal construction even indicate whether Lander endorsed the marital-status construction at issue.

14

affirmed summary judgment without reaching this issue of statutory construction, it observed: "We assume without deciding that" the plaintiff's construction of the NYCHRL affords such protection, and that "[t]he New York Court of Appeals ***has not yet addressed this issue***." *Owens*, 2023 WL 5970954, at *1 n.1 (emphasis added).

As to the difficulty of the issue presented, the most compelling evidence of this prong is the sharp contrast between *Morse*'s holding and the district court's detailed assessment that *Morse* was wrongly decided. The district court correctly identified four issues with the *Morse* decision that support a departure from its understanding of "marital status." This Court is empowered to decide that, based on persuasive evidence, *Morse* does not accurately reflect New York law on the question presented. *See cases cited*, ECF No. 48 at 8-9.

*First*, because the NYCHRL does not define "marital status," the term should be understood by its plain meaning. As the district court observed, authorities establish that the ordinary meaning of "marital status" refers to "[t]he condition of being single, married, legally separated, divorced, or widowed." *Id.* (quoting *Marital Status*, Black's Law Dictionary (11th ed. 2019)). Ex. B at *3. *Morse*'s departure from this understanding flouts established practices of ascribing statutory meaning.

*Second*, the legislative purpose of the NYCHRL's relevant sections is "focused on discriminatory animus directed at particular *groups* or *classes* of

15

people" – as opposed to individual relationships. *Id*. (emphasis added). Thus, the construction in *Morse* that would extend marital status alone – but no other protected category, not even partnership status – to include one's individual relationship contradicts that overriding statutory purpose.

*Third*, *Morse* "misconstrues" the Act's impact on the Court of Appeals' prior decision in *Levin*, which had construed "marital status" under the NYCHRL to include only its traditional definition. Ex. B at *4. In response to *Levin*, and to avoid discrimination against same-sex couples, who at the time could not marry, the NYC Council added "partnership status" as a protected class under the NYCHRL via the Act. *Morse*, however, instead concluded that the Act's inclusion of "partnership status" overturned *Levin*'s holding entirely. *Morse*, 165 A.D.3d 61 at 67. According to the district court, however, the Act merely "abrogates <u>Levin</u> to the extent that it adds 'partnership status' as a protected status . . . and to the extent that the Act's liberal construction provision is inconsistent with <u>Levin</u>'s reasoning" that denied partners without marital status any protection. Ex. B at *4. Contrary to *Morse*'s holding, the Act did not further abrogate *Levin*, given that "the identity of the spouse or partner was irrelevant in <u>Levin</u>; the case turned on the fact that the <u>Levin</u> plaintiffs were not married," consistent with the ordinary meaning of marital status. *Id.*

*Fourth*, the Act's legislative history strongly rebuts *Morse*'s construction. In 2003 and 2004, the NYC Council twice considered and *rejected* a proposed

expanded definition of "marital status" that would have included exactly the construction that Respondent relies upon. The 2003 and 2004 draft amendments proposed adding the following language to the NYCHRL:

> 24. The term "marital status" refers both to the marital status of a person in isolation, ***and to the marital status of a person in relation to another person.***
>
> . . . .
>
> (g) The provisions of this section as they relate to discrimination on the basis of marital status shall not be construed to prohibit anti-nepotism policy where such a policy is not a subterfuge to evade the purposes of this chapter.

ECF No. 32 at 6; ECF No. 33-1 at 1; ECF No. 33-2 at 1 (emphasis added). Notably, the drafters evidently proposed including Section 24(g) to avoid an undesired consequence of the proposed expanded definition of "marital status": the broad invalidation of anti-nepotism policies utilized by New York City employers (including the City itself). ECF No. 32 at 6, 17. The legislative history further demonstrates that after fully vetting and considering the adoption of an expanded "marital status" definition, the NYC Council decided not to do so. This history thus supports the district court's determination that "*Morse* errs in concluding that the City Council's abrogation of *Levin* implies an intent to create a cause of action for marital status discrimination based on the entity of the complainant's spouse." Ex. B at *4.

In addition to the factors cited by the district court, the NYCOA's recent string of decisions *rejecting* overly-liberalized constructions of the NYCHRL, despite the statute's liberal-construction provision, underscores *Morse*'s inaccuracy and overbreadth. *See Makinen v. City of N.Y.*, 86 N.E.3d 514, 519-21 (N.Y. 2017) (declining to adopt expansive "disability" definition; "the NYCHRL still must be interpreted based on its plain meaning"; otherwise, "we would be rewriting the NYCHRL, not merely giving it a broad reading"); *Chauca v. Abraham*, 89 N.E.3d 475, 478-79 (N.Y. 2017) (rejecting theory that punitive damages may be awarded under NYCHRL "upon any showing of liability" rather than heightened liability showing required at common law); *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 460-62 (N.Y. 2021) (rejecting construction of "employer" under NYCHRL that would have extended to corporate owners/principals/founders; "any such broad construction must be *reasonable* and grounded in the language of the local law.").

Finally, *Morse*'s construction results in *lesser protection* for partnership status than marital status under the NYCHRL, a construction at odds with the NYCHRL's remedial purpose. Whereas "marital status" is undefined in the statute, the Act added a definition of "partnership status" (meaning "the status of being in a domestic partnership") that includes *no* protection for one's status "in relation to another person." Thus, reading such an expansion into the marital-status definition would render protection against marital-status discrimination broader than protection

against partnership-status discrimination. Under applicable canons of statutory construction, "[i]t will be presumed that the Legislature did not intend that a statute would have an unjust effect . . . . and, if a statute apparently has such effect, some other construction is to be sought if possible." N.Y. Stat. Law § 146 (McKinney) (Editor's Notes) (footnote and citations omitted). Indeed, "[a] construction of a statute is favored which makes it operate equally on all classes of persons and *avoids unjust discrimination*." N.Y. Stat. Law § 147 (McKinney) (Editor's Notes) (citations omitted and emphasis added). Following *Morse* invites this discriminatory result.

Accordingly, ample grounds support the second certification element.

### C. Cases Requiring Similar Construction of the NYCHRL Are Likely to Continue to be Presented to District Courts in This Circuit.

As the district court held, the NYCHRL governs the rights of millions of employees in New York City, and this Court has been asked to resolve disputed constructions of the NYCHRL on several occasions, especially in light of the statute's liberal-construction provision. *See Makinen v. City of N.Y.*, 857 F.3d 491 (2d Cir. 2017); *Chauca v. Abraham*, 841 F.3d 86 (2d Cir. 2016); *Syeed v. Bloomberg L.P.*, 58 F.4th 64 (2d Cir. 2023) (certifying question as to "[w]hether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the [NYCHRL] or the New York State Human Rights Law if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-

19

based job opportunity on discriminatory grounds"); *Zakrzewska v. New School*, 574 F.3d 24, 28 (2d Cir. 2009); *Owens*, No. 22-2765, 2023 WL 5970954, at *1 n.1 (2d Cir. Sept. 14, 2023).

These recent disputes demonstrate that interpreting the NYCHRL's protections with the liberal-construction provision is difficult for litigants and courts alike. Indeed, "[e]mployment discrimination cases make up substantial portions of the dockets of the district courts in our Circuit." *Zakrzewska*, 598 F. Supp. 2d at 437. "The apparent tendency to press claims under the state and city anti-discrimination laws . . . creates a genuine need for resolution" of such statutory-construction issues without draining trial-court resources. *Id.*

### D. Certification of the Question to the New York Court of Appeals Is Warranted.

If certification of this appeal is granted, it would be appropriate for this Court to certify the question presented to the NYCOA pursuant to Local Rule 27.2. The factors supporting certification are met here: (1) the question is a matter of first impression for the NYCOA; (2) the scope of protection for marital status, in conjunction with the liberal construction of the NYCHRL, are important issues of New York public policy; and (3) certification may entirely resolve the present litigation. *See Chauca*, 841 F.3d at 93, *certified questions answered by* 89 N.E.3d 475 (N.Y. 2017).

20

Indeed, the district court in its Certification Order endorsed the view that the legal question here "presents a sufficiently plausible candidate for a certified question" to the NYCOA. Ex. B at *7. The first factor (matter of first impression) and third factor (capacity of certification to resolve the case) are both undisputed, as noted above in Sections B.2 and A, respectively. *See also id.* at *6.

With respect to the second factor (public policy), "the NYCHRL governs the rights of millions of New York City employees," and this Court "has on multiple occasions found that disputes about the scope of the NYCHRL merit a certified question to the" NYCOA. *Id.* (citing *Makinen v. City of N.Y.*, 857 F.3d 491, 495-97 (2d Cir. 2017); *Chauca*, 841 F.3d at 94-95; *Syeed*, 58 F.4th at 71).

As Petitioners have observed, the public-policy factor also weighs heavily in favor of certification for several additional reasons. Multiple levels of state and city government have expressed public views on the question presented, including in the *Levin* decision, during the attempted 2003/2004 amendments to the marital-status definition in the NYCHRL, and the passage of the Act. *See* ECF No. 32 at 6-10. This factor has supported certification of a question to the NYCOA, for example, in *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 127 (2d Cir. 2010). Moreover, the state has an interest in preserving the anti-nepotism policies of New York employers. The NYC Council expressly considered this problem in the proposed 2003/2004 amendments by pairing the proposed *expanded* definition of

21

"marital status" with a *savings provision* that would have shielded anti-nepotism policies from enforcement. ECF No. 33-1; ECF No. 33-2. Yet the construction in *Morse* would potentially override such policies with respect to any employees' present or former spouses, contrary to the legislature's intent. Finally, the public and state interest in preventing discrimination against people in domestic partnerships is high, yet *Morse*'s construction necessarily provides partnership status with *lesser* protection than marital status, as explained in Section B.2 above.

For these reasons, this case presents a clear opportunity to certify an important, unresolved issue to the NYCOA.

## CONCLUSION

This appeal presents an issue of "marital status" discrimination that has proved difficult to resolve due to a lack of clear authority from the NYCOA. The one New York intermediate-court decision to adopt Respondent's preferred definition of "marital status" – *Morse v. Fidessa Corp.* – rests on faulty logic that should not withstand appellate review. Thus, immediate appeal will not only resolve this case without the expense of further federal judicial resources but will also provide needed guidance to future district courts confronted with claims of marital-status discrimination and application of the NYCHRL's liberal-construction provision. Petitioners urge the Court to accept this appeal.

22

Dated:  January 16, 2024

ARENTFOX SCHIFF LLP

 */s/ James Hulme*
James H. Hulme
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@afslaw.com

Darrell S. Gay
Nicholas L. Collins
1301 Avenue of the Americas,
42nd Floor
New York, NY 10019
(212) 484-3900
darrell.gay@afslaw.com
nicholas.collins@afslaw.com

*Attorneys for Petitioners*

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the portions exempted by Fed R. App. P. 32(f),

[X] this brief contains 5,178 words

[  ] this brief uses monospaced type and contains [  ] lines

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; or

[  ] this brief or other document has been prepared in a monospaced typeface using [  ] in [  ].

Dated:  January 16, 2024             ARENTFOX SCHIFF LLP

                                        */s/ James Hulme*
                                        James H. Hulme
                                        1717 K Street, NW
                                        Washington, DC 20006
                                        (202) 857-6000
                                        james.hulme@afslaw.com

                                        Darrell S. Gay
                                        Nicholas L. Collins
                                        1301 Avenue of the Americas,
                                        42nd Floor
                                        New York, NY 10019
                                        (212) 484-3900
                                        darrell.gay@afslaw.com
                                        nicholas.collins@afslaw.com

                                        *Attorneys for Petitioners*

# EXHIBIT A

2023 WL 5671527
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Kelvin HUNTER, Plaintiff,

v.

DEBMAR-MERCURY LLC, Ira Bernstein,
Mort Marcus, and John and Jane Doe 1-5
(Employees of Defendant Debmar-Mercury LLC,
and/or corporations/subsidiaries of Debmar-
Mercury LLC not yet known), Defendants.

22 Civ. 1687 (PGG)
|
Signed September 1, 2023

**Attorneys and Law Firms**

Abraham George, Law Offices of Abe George, P.C., New
York, NY, for Plaintiff.

Darrell Spencer Gay, Nicholas Lydell Collins, Arent Fox
LLP, New York, NY, Defendants Debmar-Mercury LLC, Ira
Bernstein, Mort Marcus.

<u>**MEMORANDUM OPINION & ORDER**</u>

PAUL G. GARDEPHE, United States District Judge:

**\*1** In this employment discrimination action, Plaintiff
Kelvin Hunter contends that his former employer, Defendant
Debmar-Mercury LLC; its principals, Defendants Ira
Bernstein and Mort Marcus; and certain Doe individuals and
entities terminated his employment in violation of the New
York City Human Rights Law (the "NYCHRL"), N.Y.C.
Admin. Code § 8-101 et seq. Defendants have moved to
dismiss pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, arguing that their termination of Plaintiff is
not actionable under the NYCHRL, because the termination
decision did not arise from any protected status Plaintiff
enjoys under the NYCHRL. For the reasons stated below,
Defendants' motion to dismiss will be denied.

<u>**BACKGROUND**</u>

Plaintiff alleges that he is a citizen of New York and that
Debmar-Mercury is an LLC, the sole members of which are

Defendants Bernstein and Marcus. Bernstein and Marcus are,
in turn, citizens of California. (Aug. 7, 2023 Pltf. Ltr. (Dkt.
No. 39); see Cmplt. (Dkt. No. 1) ¶¶ 7-11) Jurisdiction is
premised on diversity of citizenship, pursuant to 28 U.S.C. §
1332. (Cmplt. (Dkt. No. 1) ¶ 3)

**I. <u>FACTS</u>** [1]

Plaintiff Hunter is the ex-husband of Wendy Williams, the
host of the <u>Wendy Williams Show</u>, a daytime television
program that ran from 2008 to 2022. Hunter was the executive
producer of the <u>Wendy Williams Show</u> from its inception until
his termination in April 2019. "As Executive Producer of the
Show, Plaintiff Hunter undertook several functions that were
pivotal to the Show's success, from the selection and/or final
approval of the countless guests [who] have appeared on the
Show and substantially contributed to the Show's popularity,
to interfacing with Bernstein and Marcus [–] on behalf of
Wendy Williams [–] for purposes of developing show ideas
and the day-to-day operations of the Show." (<u>Id.</u> ¶¶ 16, 18,
25-26, 28, 32 39)

"Debmar[-Mercury] is a national television syndication
company [that] produces, creates, finances, manages,
and distributes television programming." Defendants
Bernstein and Marcus are Debmar-Mercury's "co-presidents"
and "handl[e] [its] day-to-day affairs." Debmar-Mercury
produced the <u>Wendy Williams Show</u> for the entirety of its
run, and "Bernstein and Marcus ... exercised substantial
personal executive control over the business affairs of
Debmar[-Mercury,] including, but not limited to, rendering
final determinations as to the Show's staffing and/or
personnel." (<u>Id.</u> ¶¶ 10, 14-16, 24, 39)

On or about April 11, 2019, Plaintiff Hunter was served
with notice that his then-wife, Wendy Williams, [had] filed
for divorce.

On or about April 18, 2019, Plaintiff Hunter received the
following notice from defendant Bernstein, which stated:

Dear Kevin:

Out of respect for our 10-year working relationship,
we had hoped to meet with you in person and traveled
to New York to do so, but unfortunately, you have
canceled today's meeting and we are left with no
choice but to communicate to you in writing that
effective immediately, your role as Executive Producer
of the <u>Wendy Williams Show</u> is terminated, and your

professional relationship with Debmar-Mercury is also concluded.

**\*2** In connection with the termination of employment, you [are] no longer permitted on the studio premises, and all communication regarding your transition (including collection of your belongings from the studio premises) should be handled via your attorney, as you have indicated that you are represented by counsel. Your attorney may reach out to either of us directly so we can direct him/her to the appropriate parties.

Thank you for all your contributions over the years, Kevin we wish you well.

- Ira

The message was sent from Defendant Bernstein with the tacit and/or explicit approval of Defendant Marcus on behalf of their corporation, Defendant Debmar[-Mercury].

The termination message to Plaintiff made no reference to any performance-related reason(s) or any decision(s) related to Plaintiff's employment as an Executive Producer.

(Id. ¶¶ 33-36) [2]

## II. PROCEDURAL HISTORY

The Complaint was filed on March 1, 2022 (Dkt. No. 1), and asserts a claim for "unlawful termination pursuant to NYCHRL § 8-107." Plaintiff contends that he "was terminated solely because of his marital status [vis-à-vis] the Show's host," and that this "conduct ... constitutes a clear violation of Hunter's statutory rights [under the NYCHRL] to be free of employment discrimination on the basis of marital status." (Id. ¶¶ 48-60)

In a June 6, 2022 letter, Defendants sought permission to move to dismiss the Complaint for failure to state a claim. Defendants contend that

"[t]he New York Court of Appeals has held that the prohibitions against marital status discrimination under [the New York State Human Rights Law] and [NYCHRL] prohibit discrimination only on the basis of marital status, i.e. discrimination based on the mere fact that a person is married or unmarried." Courts in the Second Circuit have adopted that same construction. Under the NYCHRL, "marital status discrimination is limited to discrimination against those who are married or unmarried and does

not apply to discrimination based on being married to a particular person."

(June 6, 2022 Def. Ltr. (Dkt. No. 17) at 2-3 [3] (quoting Christoforou v. Cadman Plaza N., Inc., No. 04-CV-08403 (KMW), 2009 WL 723003, at \*7, n.8 (S.D.N.Y. Mar. 19, 2009), and Gokhberg v. PNC Bank, N.A., No. 17-CV-00276 (DLI)(VMS), 2021 WL 421993, at \*15-16 (E.D.N.Y. Jan. 6, 2021)) (brackets and emphasis in Defendants' letter))

At a July 28, 2022 conference concerning Defendants' proposed motion to dismiss, this Court pointed out that Defendants' construction of the NYCHRL had been rejected in Morse v. Fidessa Corp., 165 A.D.3d 61 (1st Dept. 2018), in which the First Department held that "the [NYCHRL's] prohibition of marital status [discrimination] addresses not only 'whether an individual is married or not married,' but also 'whether two individuals are married to each other or not married to each other.' " (July 28, 2022 Tr. (Dkt. No. 29) at 8 (quoting Morse, 165 A.D.3d at 68)). This Court farther noted that in reaching this holding, the Morse court had concluded that Levin v. Yeshiva Univ., 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001) had been abrogated by an amendment to the NYCHRL. (July 28, 2022 Tr. (Dkt. No. 29) at 8); see Morse, 165 A.D.3d at 67-68 (discussing Levin). In Levin, the New York Court of Appeals held that "for purposes of applying the [NYCHRL's] statutory proscription against marital status discrimination, a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationship – or absence thereof – with another person." Levin, 96 N.Y.2d at 490, 730 N.Y.S.2d 15, 754 N.E.2d 1099. The Levin court had ruled that the latter circumstance is not covered by the NYCHRL.

**\*3** At the July 28, 2022 conference, this Court explained that

[P]laintiff's New York City Human Rights Law discrimination claim rises out of his divorce from Williams. Under Morse, such a theory of marital status discrimination is now cognizable.

Defendants have not addressed Morse or its progeny in their pre-motion letter. Defendants instead cite to Gokhberg v. PNC Bank, Nat'l Assn, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021), which states that "marital status discrimination is limited to discrimination against those who are married or unmarried, and does not apply to discrimination based on being married to a particular person." Id. at \*6. Gokhberg, in turn, relies on Christoforou v. Cadman Plaza N., Inc.,

2009 WL 723003 at *7, n.8, (S.D.N.Y. Mar. 19, 2009), which in turn relies on the New York Court of Appeals decision in <u>Levin</u>. <u>Id.</u> For reasons the <u>Morse</u> Court explains, <u>Levin</u> is no longer good law.

Because it appears that [P]laintiff has pled a valid theory of marital status discrimination under the New York City Human Rights Law, [D]efendants' proposed motion to dismiss appears unlikely to succeed.

(July 28, 2022 Tr. (Dkt. No. 29) at 9)

At the conclusion of the July 28, 2022 conference, the Court "ask[ed] defense counsel to speak with the clients about what [it had] said ... and to submit a letter in one week's time stating whether they wish to proceed with the proposed motion to dismiss. If so, defense counsel will explain why there is a good-faith basis for doing so in light of the case law ... discussed today." (<u>Id.</u> at 12)

In an August 4, 2022 letter, Defendants state that they will proceed with their motion to dismiss, because "this Court is not bound by <u>Morse</u> to the extent that it does not persuasively state New York law." (Dkt. No. 27 at 1) This Court subsequently issued a briefing schedule for Defendants' motion. (Aug. 8, 2022 Order (Dkt. No. 28))

Defendants filed their motion to dismiss on October 21, 2022. (Dkt. No. 31)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint," <u>Kassner</u>, 496 F.3d at 237 (2d Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." <u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,' " <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. 1937 (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S.Ct. 1955), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. 1937.

**\*4** "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999)). Moreover, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." <u>Id.</u> (quoting <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006)).

### B. NYCHRL Employment Discrimination Claims

The NYCHRL provides that

[i]t shall be an unlawful discriminatory practice ... [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person:

(1) [t]o represent that any employment or position is not available when in fact it is available;

(2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or

(3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code § 8-107(1)(a). "Marital status" is not defined in the NYCHRL.

As to statutory construction, the NYCHRL provides that

[t]he provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed. Exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct.

Cases that have correctly understood and analyzed the liberal construction requirement of subdivision a of this section and that have developed legal doctrines accordingly that reflect the broad and remedial purposes of this title include Albunio v. City of New York, 16 N.Y.3d 472, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011), Bennett v. Health Management Systems, Inc., 92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011), and the majority opinion in Williams v. New York City Housing Authority, 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009).

Id. § 8-130 (paragraph lettering omitted).

The New York City Council has instructed that "similarly worded provisions of federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise." N.Y.C. Local Law 85 (the "Restoration Act") § 1 (2005); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (instructing district courts to "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible' ") (quoting Albunio, 16 N.Y.3d at 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135). "But any such broad construction must be reasonable and grounded in the language of the [statute]." Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 462, 167 N.E.3d 454 (2021) (emphasis in original).

## II. ANALYSIS

Defendants do not dispute that if the definition of "marital status" in the NYCHRL includes an employee's marital status in relation to another person, Hunter has stated a claim. Accordingly, the sole issue on this motion is whether such a claim is cognizable under the NYCHRL.

### A. Applicable Law

### 1. *Morse v. Fidessa Corp.*, 165 A.D.3d 61 (1st Dept. 2018)

**\*5** In Morse, plaintiff was employed at a financial services company, and alleged that he was fired after his "perceived" spouse – a co-worker – left for a rival firm. Morse "was told that he was fired because of this perceived marital relationship, and that, if he divorced [his perceived spouse], he would be reconsidered for re-employment." Morse, 165 A.D.3d at 62-63. "Defendants moved to dismiss the complaint on the ground that the [NYCHRL's] protection [does] not extend to employment decisions based on the identity of the employee's partner or spouse, but only on the basis of whether he or she was married or not." Id. at 63. Supreme Court, New York County, denied the motion to dismiss, and the First Department affirmed.

The Morse court first describes the pre-Restoration Act case law on this point, as set out by the New York Court of Appeals in Levin v. Yeshiva University, 96 N. Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001):

Before the passage of the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law 85 (2005) (the "Restoration Act"), the Court of Appeals had resolved the above-stated question – without recourse to liberal construction analysis – by holding that "a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationship – or absence thereof – with another person." Levin, 96 N.Y.2d at 490, 730 N.Y.S.2d 15, 754 N.E.2d 1099. In Levin, [a housing discrimination case,] the "disqualifying relationship" was one that was not a "legally recognized, family relationship[ ]." Id. at 490-491, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Thus, if a housing provider refused to rent to an unmarried person, regardless of whether the unmarried person was living with another person, its conduct would be actionable. However, if the housing provider treated an unmarried couple disadvantageously, that would not be actionable because the disadvantageous treatment would not be based on the couple's marital status but on the disqualifying relationship (not being a "legally recognized, family relationship[ ]").

Levin's holding was derived from Matter of Manhattan Pizza Hut v. New York State Human Rights Appeal Bd., 51 N.Y.2d 506, 434 N.Y.S.2d 961, 415 N.E.2d 950 (1980), an employment discrimination case brought under the New York State Human Rights Law, not the [NYCHRL]. Manhattan Pizza Hut ruled that the "plain and ordinary

2023 WL 5671527

meaning of 'marital status' is the social condition enjoyed by an individual by reason of his or her having participated or failed to participate in a marriage." 51 N. Y.2d at 511, 434 N.Y.S.2d 961, 415 N.E.2d 950. That is, "when one is queried about one's 'marital status,' the usual and complete answer would be expected to be a choice among 'married,' 'single,' etc., but would not be expected to include an identification of one's present or former spouse and certainly not the spouse's occupation." Id. at 511-12, 434 N.Y.S.2d 961, 415 N.E.2d 950.

Id. at 64 (citation formatting altered; emphasis in original).

The Morse court then explains that the Restoration Act and subsequent City Council legislation passed in 2016 require courts to alter their construction of the NYCHRL:

The Restoration Act changed the judicial landscape with respect to the [NYCHRL]. A more recent enactment, N.Y.C. Local Law 35 (2016), went even further. That law amended Administrative Code § 8-130 ("Construction") "to provide additional guidance for the development of an independent body of jurisprudence for the New York city human rights law that is maximally protective of civil rights in all circumstances." Local Law 35 § 1.

In the March 8, 2016 report of the Committee on Civil Rights that accompanied Local Law 35 (the Committee Report), the Council set forth its concerns:

Over at least the last 25 years, the Council has sought to protect the [NYCHRL] from being narrowly construed by courts, particularly through major legislation adopted in 1991 and 2005. These actions have expressed a very specific vision: a Human Rights Law designed as a law enforcement tool with no tolerance for discrimination in public life. The 2005 Restoration Act provided that the [NYCHRL] is to be interpreted liberally and independently of similar federal and state provisions to fulfill the "uniquely broad and remedial" purposes of the law. The Act amended the [NYCHRL's] liberal construction provision, Administrative Code § 8-130, to accomplish this goal. Some courts have recognized and followed this vision, but others have not, and many areas of the law remain as they were before the 2005 Restoration Act because they have not been scrutinized to determine whether they are consistent with the uniquely broad requirements of the [NYCHRL].

*6 Comm. Rept. of the Govt. Affairs Div., Comm. on Civ. Rights at 8 (Mar. 8, 2016) (emphasis added).

The amendment included ratification of three decisions under the [NYCHRL]: Albunio v. City of New York, 16 N.Y.3d 472, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011); Bennett v. Health Mgt. Sys., 92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dept. 2011); and Williams v. N.Y.C. Housing Auth., 61 A.D3d 62, 872 N.Y.S.2d 27 (1st Dept 2009). See N.Y.C. Admin. Code § 8-130(c). Each of the cases was described as having "correctly understood and analyzed the liberal construction requirement" of the [NYCHRL], and as having "developed legal doctrines accordingly that reflect the broad and remedial purposes" of the [NYCHRL]. Id. To ignore or deviate from any of the Committee Report cases would be to flout the Council's intent as to the [NYCHRL].

....

Thus, [pursuant to the Restoration Act and Local Law 35,] courts must play a highly active role in the development of the [NYCHRL] by interpreting all cases in a manner consistent with the goal of providing unparalleled strength in deterring and remedying discrimination. As the Court of Appeals ruled in Albunio, 16 N.Y.3d 472, 922 N.Y.S.2d 244, 947 N.E.2d 135, one of the Committee Report cases, all the provisions of the [NYCHRL] must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." 16 N.Y.3d at 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135.

Id. at 64-65, 67 (footnote omitted; citation formatting altered; emphases in Morse).

The Morse court goes on to conclude that the Restoration Act and Local Law 35 abrogate Levin:

Our task in construing the term "marital status" is guided by the above-stated history. Levin ... relied in part on an interpretation of the New York State Human Rights Law and failed to engage in liberal construction analysis, let alone the enhanced liberal construction analysis intended by the comprehensive 1991 amendments to the [NYCHRL], N.Y.C. Local Law 39 (1991) (which were only brought to life in 2005, with the passage of the Restoration Act). Thus, Levin's interpretation of "marital status" cannot be sustained.

Indeed, Levin was cited in connection with the passage of the Restoration Act as illustrative of the cases that had " 'either failed to interpret the City Human Rights Law to fulfill its uniquely broad purposes, ignore[d] the text of specific provisions of the law, or both.' " Williams, 61

A.D.3d at 67, 872 N.Y.S.2d 27 (quoting from transcript of Council debate). With the passage of the Restoration Act, Levin " 'and others like it will no longer hinder the vindication of our civil rights.' " Id. (quoting from debate transcript).

Plainly, the Council rejected the "plain and ordinary" meaning of "marital status" as set forth in Manhattan Pizza Hut, and consequently the distinction between marital status as such and marital status as a "disqualifying relationship."

"Marital status" may refer to whether an individual is married or not married. It may also refer to whether two individuals are married to each other or not married to each other. In the instant case, it refers to the latter: the marital status of two people in relation to each other.

Id. at 67-68 (citation formatting altered; internal alterations of quotations omitted).

**\*7** The Morse court likewise rejects defendants' reliance on (1) Cerullo v. Fricione, 2010 NY OATH LEXIS 428 (June 2, 2010), a 2010 administrative law judge ("ALJ") decision holding that "actionable marital status discrimination [under the NYCHRL] is based on the status of an individual as married, single, separated, divorced, or widowed, not on the status of an employee in relation to another employee," Cerullo, 2010 NY OATH LEXIS 428, \*17; and (2) "Intro 22," a 2004 draft of the Restoration Act that, unlike the version of the Act that was enacted, defines "marital status" as "the marital status of a person in isolation, [and/or] the marital status of a person in relation to another person," N.Y. City Council, Comm. on Gen. Welfare, Int. No. 22 ("Intro 22") § 2 (Sept. 22, 2004) (available at Dkt. No. 33-2):

Defendants' reliance on the decision of [a] New York City Commission on Human Rights [ALJ] in [Cerullo], a pretrial decision dismissing marital status claims ... is misplaced for a variety of reasons.

As a preliminary matter, the ALJ decision is not entitled to deference by courts. "[W]here the question is one of pure statutory reading and analysis, ... there is little basis to rely on any special competence or expertise of the administrative agency," and "courts are free to ascertain the proper interpretation from the statutory language and legislative intent." Matter of Smith v. Donovan, 61 A.D.3d 505, 508-509, 878 N.Y.S.2d 675 (1st Dept. 2009) (internal quotation marks omitted).

....

To the extent that Cerullo is premised on ... [Intro 22,] an early version of the Restoration Act ..., it proceeds on faulty assumptions....

What Cerullo fails to note is that the Council explicitly chose another path for changing the definition of marital status. That is, it accepted the proposition that "[i]n respect to marital status, the addition of 'partnership status' [to § 8-107's list of prohibited bases for employment discrimination] is only an interim measure; the broader question will have to be revisited after the courts have re-examined their previous marital status rulings in light of each and all of the requirements of revised Section 8-130." [Testimony of Craig Gurian, bill author and director of the Anti-Discrimination Center of Metro N.Y., at 7 (Apr. 14, 2005), available at http://www.nycourts.gov/reporter/webdocs/CenterTestimony041405.pdf].... Confirmation that the Council left the interpretation of "marital status" to the courts is found in the report of the Committee on General Welfare, which stated [that] "[p]ending judicial reconsideration of the proper scope of protection from discrimination based on marital status, this provision [partnership status] will ensure that" domestic partners are protected "from all forms of discrimination addressed by the human rights law." Rept. of Govt. Affairs Div., Comm. on Gen. Welfare, Aug. 17, 2005, 2005 N.Y. City Legis. Ann. at 536.

The reasons the Council did not add a marital status provision in 2005 are open to speculation....

What there cannot be speculation about is these facts: (a) the Council, in leaving the parameters of "marital status" to the courts, could have narrowed the courts' mandate in one or more ways but did not; (b) the overall mandate to construe the [NYCHRL] to achieve its uniquely broad purposes was put in place for all issues, as reaffirmed by Local Law 35; (c) the liberal construction provision was envisioned as "obviating the need for wholesale textual revision of the myriad specific substantive provisions of the law," Williams, 61 A.D.3d at 74, 872 N.Y.S.2d 27; (d) the narrow definition in Levin of marital status for [NYCHRL] purposes was legislatively overruled; (e) providing [NYCHRL] protection for couples on the basis of whether or not they are married to one another involves an entirely plausible interpretation of "marital status"; and (f) encompassing "couples' protection" within the

proscription against discrimination on the basis of marital status is the best way to achieve broad coverage of the city law in accordance with the stated goal of the Council to meld the broadest vision of social justice with the strongest law enforcement deterrent.

**\*8** <u>Morse</u>, 165 A.D.3d at 70-72 (further citations omitted; citation formatting altered; emphasis in original).

<u>Morse</u> has been followed by at least one New York court. <u>See</u> <u>Karayiorgou v. The Trustees of Columbia University</u>, 2021 WL 143472, at \*4-5 (Sup. Ct. N.Y. Cnty., Jan. 14, 2021) ("Plaintiff has shown that she was qualified as a leading researcher and scientist to join the Zuckerman Institute, that an offer to join the Zuckerman Institute was made to her and that her offer was rescinded in March 2015 only after Colombia learned that plaintiff and [her scientist husband] divorced in December 2014.... Under ... <u>Morse</u> ..., a jury could find that defendants' actions were motivated by plaintiff's marital status."). The parties have cited no case that has rejected <u>Morse</u>'s analysis, nor is this Court aware of any such case.

**2. <u>Erie</u> and Intermediate State Court Appellate Decisions**

Pursuant to <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court exercising diversity jurisdiction must apply the substantive state law that would govern had the case been brought in state court.

[I]n applying the law of a given state, the pronouncement of the state's highest court "is to be accepted by federal courts as defining state law." <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940). "Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts." <u>In re Brooklyn Navy Yard Asbestos Litig.</u>, 971 F.2d 831, 850 (2d Cir. 1992). To be sure, a federal court is not bound by the opinions of a state's lower courts. But the decision of an "intermediate appellate state court" is "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." <u>West</u>, 311 U.S. at 237, 61 S.Ct. 179. When faced with an unsettled question of state statutory interpretation, a federal court should consider "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional

law, and federal cases which construe the state statute." <u>Bensmiller v. E.I. Dupont de Nemours & Co.</u>, 47 F.3d 79, 82 (2d Cir. 1995).

<u>In re Gen. Motors LLC Ignition Switch Litig.</u>, 407 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (further citations omitted).

Accordingly, while a federal court applying state law is not bound by the rulings of intermediate appellate state courts, it is generally not free to entirely disregard such rulings. Indeed, in the absence of persuasive evidence that a state's highest court would rule to the contrary, the decisions of an intermediate appellate state court should be followed. <u>Id.</u>

<u>Mayes v. Summit Ent. Corp.</u> ("<u>Mayes II</u>"), 287 F. Supp. 3d 200 (E.D.N.Y. 2018), is instructive on this point. In that case, models sued strip club operators for wrongfully using their likenesses. Plaintiffs contended, <u>inter alia</u>, that defendants' conduct violated New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349. Defendants moved to dismiss, citing <u>DePinto v. Ashley Scott, Inc.</u>, 222 A.D.2d 288, 635 N.Y.S.2d 215 (1st Dept. 1995), in which the First Department held – without analysis – that a non-consumer plaintiff in a GBL § 349 case – such as the models in <u>Mayes</u> – must allege not only customer confusion, but also "a significant risk of harm to the public health or interest." <u>DePinto</u>, 222 A.D.2d at 289, 635 N.Y.S.2d 215.

**\*9** A magistrate judge issued a Report & Recommendation ("R&R") recommending that the motion to dismiss be denied, finding that <u>DePinto</u> was not persuasive because it relied on "summar[y] [reasoning]" and "rest[s] on ... flawed foundations." <u>Mayes v. Summit Ent. Corp.</u> ("<u>Mayes I</u>"), No. 116CV06533NGGST, 2018 WL 566314, at \*13 (E.D.N.Y. Jan. 18, 2018).

The district court rejected the magistrate judge's recommendation:

Even though the R & R is correct that the Court of Appeals has not ruled on the matter, it errs in its belief that this court does not have to follow what the Appellate Division says.... "The Appellate Division's statements concerning state law are persuasive evidence of the views of New York's intermediate appellate courts on the matter," and ... courts cannot ignore decisions by the Appellate Division whether or not such decisions have "articulated a reasoned basis." [<u>DiBella v. Hopkins</u>, 403 F.3d 102, 113 (2d Cir. 2005)].... [T]his court is "bound to apply the law as interpreted by a state's intermediate appellate courts unless

there is persuasive evidence that the state's highest court would reach a different conclusion." Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley Mortg. Capital Holdings LLC, No. 14-CV-3020 (KBF), 2018 WL 357315, at *3 (S.D.N.Y. Jan. 10, 2018). A federal court may not choose to ignore substantive state law if there is no indication that state courts have abandoned their precedent on the matter.

Mayes II, 287 F. Supp. 3d at 206-07 (further citations omitted; internal alterations omitted); see also id. at 207 n.2 (listing cases applying the "persuasive evidence" standard). The district court went on to find that plaintiff had not alleged "a significant risk of harm to the public health or interest" as required by DePinto, and therefore granted defendants' motion to dismiss plaintiffs' GBL § 349 claim. Id. at 210-11.

**B. Whether *Morse*'s Definition of "Marital Status" Should Be Followed**

Defendants contend that Morse's holding – that " '[m]arital status' [– as used in the NYCHRL –] may refer to ... whether two individuals are married to each other or not married to each other," Morse, 165 A.D.3d at 68 – "cannot be accepted as an accurate statement of the NYCHRL and should not control the disposition of Plaintiff's case." (Def. Br. (Dkt. No. 32) at 15) As discussed above, in asking this Court to disregard Morse, Defendants must present "persuasive evidence" demonstrating that the New York Court of Appeals would reach a different result. Mayes II, 287 F. Supp. 3d at 206-07; see West, 311 U.S. at 237, 61 S.Ct. 179.

In support of their motion to dismiss, Defendants first argue that courts in this District "not uncommon[ly]" reject the decisions of the Appellate Division. Defendants then argue that Morse is not persuasive because (1) it "disregard[s] the legislative history that contradicts its construction of 'marital status' "; (2) "the liberal construction provision of the NYCHRL does not justify judicially changing the definition of 'mar[it]al status' "; and (3) "construing the definition of 'marital status' to include marriage to a specific person would undermine anti-nepotism policies." (Def. Br. (Dkt. No. 32) at 15-22 (capitalization altered); see also id. at 10-14 (discussing legislative history of the Restoration Act))

**\*10** These arguments do not amount to "persuasive evidence" that the New York Court of Appeals would reject Morse.

**1. Rejection of Appellate Division Decisions**

Citing Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Insurance Co., 508 F. Supp. 2d 278, 293-94 (S.D.N.Y. 2007), and U.S. Specialty Insurance Co. v. Wesco Ins. Co., 529 F. Supp. 3d 251, 258–59 (S.D.N.Y. 2021), Defendants contend that "it is not uncommon for courts of this district to decline to follow [Appellate Division] decisions." (Id. at 15) Neither case supports that proposition, however.

In Brentwood, the parties disputed whether a New York insurance regulation regarding reimbursement, which did not explicitly mention MRIs, nevertheless applied to MRIs. The New York State Department of Insurance had issued opinion letters stating that the regulation applied to MRIs, and the Brentwood court adopted that view. 508 F. Supp. 2d at 290-92. In so holding, the court declined to follow (1) a Queens County Civil Court decision holding that the regulation did not apply to MRIs; and (2) a Third Department decision holding that a similarly worded regulation did not refer to sonograms, because it did not explicitly refer to sonograms. The Brentwood court explained that these cases were distinguishable, because the opinion letters were not before the Civil Court, and the Third Department decision involved sonograms and not MRIs. Id. at 293-94.

As to U.S. Specialty Insurance, Defendants assert that that court "did 'not find [intermediary] cases persuasive' in order to predict how the [New York] Court of Appeals would rule on the question presented." (Def. Br. (Dkt. No. 32) at 15 (quoting U.S. Specialty Ins., 529 F. Supp. 3d at 258-59) (bracketed material added in Def. Br.)) But the cases that the UJS. Specialty Insurance court finds unpersuasive are from Federal district courts sitting in diversity, and not from intermediate appellate state courts. See U.S. Specialty Ins., 529 F. Supp. 3d at 259 ("[T]he Court may also consider the district court cases Colony cites [– Mt. Hawley Insurance Co. v. Liberato, 2010 WL 2653326 (E.D.N.Y. June 25, 2010), and Mt. Hawley Insurance Co. v. National Builders LLC, 2009 WL 1919611 (S.D.N.Y. June 25, 2009) –] in its effort to predict how the New York Court of Appeals would resolve the questions at bar. However, the Court does not find those cases persuasive in this context.") (quotation omitted). Indeed, the U.S. Specialty Insurance court applies an Appellate Division case instead of those district court cases. Id. at 258-59 (citing and applying 233 E. 17th St., LLC v. L.G.B. Dev., Inc., 78 A.D.3d 930, 913 N.Y.S.2d 110 (2d Dept. 2010)).

In sum, <u>Brentwood</u> and <u>U.S. Specialty Insurance</u> provide no support for Defendants' argument that courts in this District exercising diversity jurisdiction frequently reject Appellate Division holdings regarding New York law.

## **2. <u>Legislative History</u>**

Defendants note that Intro 22 – the 2004 draft of the Restoration Act – and a 2003 predecessor bill for the Restoration Act both include the following language: " 'The term "marital status" refers both to the marital status of a person in isolation, <u>and to the marital status of a person in relation to another person.</u>' " (Def. Br. (Dkt. No. 32)) at 10 (quoting N.Y. City Council, Comm. on Gen. Welfare, Int. No. 439 (Apr. 30, 2003) (emphasis in Def. Br.); and citing Intro 22 (same)) The language regarding "in relation to another person" does not appear in the Restoration Act.

*11 Defendants go on to argue that

[t]his twice-proposed amendment, if adopted, would have expanded the scope of marital status protection to include "the marital status of a person in relation to another person." But as the legislative history demonstrates, when the NYC Council ultimately adopted the Act in 2005, the NYC Council did <u>not</u> enact this amendment precisely because it did not intend this outcome.

....

Although <u>Morse</u> elliptically cites to testimony heard by the NYC Council before the passage of the Act, the decision <u>nowhere</u> acknowledges even the existence of the 2003 and 2004 proposed amendments to the definition of "marital status." <u>See</u> 165 A.D.3d at 67-70. This omission is remarkable, considering that those two proposed amendments would have enacted the exact expanded definition that the <u>Morse</u> decision endorsed – the status of "two people <u>in relation to each other</u>." <u>Id.</u> at 68 (emphasis added).

Thus, <u>Morse</u> ignores the history of the NYC Council which twice considered and twice rejected that same expanded definition. The U.S. Supreme Court's admonition, in another case of statutory interpretation that followed a legislative amendment, is especially instructive: "to adopt [such an] interpretation would read back into the [relevant] Act the very word [ ] that the [legislative body] deleted. We ordinarily will not assume that [the legislature] intended

to enact statutory language that it has <u>earlier discarded in favor of other language.</u>" <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 93, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (emphasis added; internal quotation marks and citation omitted).

(Def. Br. (Dkt. No. 32) at 11, 16-17 (alterations in Def. Br.; further citations omitted); <u>see</u> <u>also</u> Def. Reply Br. (Dkt. No. 34) at 7 (citing <u>People v. Korkala</u>, 99 A.D.2d 161, 472 N.Y.S.2d 310 (1st Dept. 1984), and <u>Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers</u>, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974)))

Defendants further contend that the City Council's reason for not enacting Intro 22's proposed definition of "marital status" can be discerned from the 2003 and 2004 hearing testimony of (1) Clifford Mulqueen, then-Deputy Commissioner for the New York City Commission on Human Rights; and (2) then-Commissioner Patricia Gatling. Mulqueen and Gatling testified that " '[t]he [C]ommission [on Human Rights] feels that this definition would be inappropriate since it does not relate to the definition of marital status or any other protected class but rather extends the law to protect based upon personality traits, individual qualities or characteristics.... The proposed definition of marital status will have the unintended consequence of protecting individuals who are not involved in the type of relationships that the ... City Council is seeking to protect.' " (Def. Br. (Dkt. No. 32) at 11-12 (quoting Hrg. on Int. No. 439 before Comm. on Gen. Welfare, at 22:12-23:5 (Oct. 16, 2003); and Hrg. on Int. No. 22 before Comm. on Gen. Welfare, at 60:25-61:5 (Sept. 22, 2004)))

As an initial matter, Defendants' assertion that <u>Morse</u> "<u>nowhere</u> acknowledges even the existence of the 2003 and 2004 proposed amendments to the definition of 'marital status' " is flatly wrong. As discussed above, <u>Morse</u> (1) cites Intro 22; (2) acknowledges that Intro 22 "made specific provision for the expansion of marital status coverage"; (3) states that "the Council explicitly chose another path for changing the definition of marital status" – <u>i.e.</u>, it "left the interpretation of 'marital status' to the courts"; and (4) observes that "[t]he reasons the Council did not [ultimately] add a marital status provision in 2005 are open to speculation." <u>Morse</u>, 165 A.D.3d at 71-72 & n.5. In sum, <u>Morse</u> does not ignore the Restoration Act's legislative history, as Defendants argue. Instead, <u>Morse</u> explicitly addresses the Act's legislative history and concludes that the City Council "left the interpretation of 'marital status' to the courts." <u>Id.</u>

**\*12** In any event, Defendants' interpretation of the Restoration Act's legislative history does not amount to "persuasive evidence" that the New York Court of Appeals – if confronted by the "marital status" issue addressed in <u>Morse</u> – "would decide otherwise." <u>West</u>, 311 U.S. at 237, 61 S.Ct. 179.

To begin, the City Council did not define – either in the text of the Restoration Act or in other statements accompanying that legislation – the meaning of "marital status." The City Council likewise did not explain why the proposed language regarding "marital status" was not adopted. Although Defendants cite testimony offered during hearings concerning the Act, the intent of the City Council cannot be reliably discerned from the testimony of the witnesses who appear before it. See <u>Harry Fox Agency, Inc. v. Mills Music, Inc.</u>, 543 F. Supp. 844, 864 (S.D.N.Y. 1982) ("statements made at committee hearings by representatives of various interests are entitled to little if any weight in interpreting Congressional intent," because "the views expressed by witnesses are not necessarily the same as those of the legislators ultimately voting on the bill"), <u>rev'd on other grounds</u>, 720 F.2d 733 (2d Cir. 1983), <u>rev'd sub nom. Mills Music, Inc. v. Snyder</u>, 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985), and <u>aff'd on remand</u>, 779 F.2d 35 (2d Cir. 1985); <u>Food Mktg. Inst. v. Argus Leader Media</u>, ––– U.S. ––––, 139 S. Ct. 2356, 2364, 204 L.Ed.2d 742 (2019) (""excerpts from committee hearings' are 'among the least illuminating forms of legislative history' ") (quoting <u>Advocate Health Care Network v. Stapleton</u>, 581 U.S. 468, 481, 137 S.Ct. 1652, 198 L.Ed.2d 96 (2017); further quotation omitted).

As to Defendants' argument that <u>Morse</u> erroneously " 'adopt[s] [an] interpretation' " of the NYCHRL that " 'would read back into the ... Act the very [language] that the [legislative body] deleted,' " and that courts " 'ordinarily will not assume that [the legislature] intended to enact statutory language that it has <u>earlier discarded in favor of other language</u>' " (Def. Br. (Dkt. No. 32) at 16-17 (quoting <u>Chickasaw Nation</u>, 534 U.S. at 93, 122 S.Ct. 528) (emphasis in Def. Br.)), decisions from the New York Court of Appeals demonstrate that that court does not always determine the meaning of a statute by reference to language from earlier bills that was omitted in the enacted provision. See, e.g., <u>People v. Thomas</u>, 33 N.Y.3d 1, 12 n.9, 121 N.E.3d 270 (2019) ("[T]he dissent cites the legislature's failure to enact the Advisory Committee on Criminal Law and Procedure's proposed amendment to the predicate felony statutes that would more clearly state that the original sentence date applies in cases such as this. Legislative inaction, however, 'is a weak reed upon which to lean in determining legislative intent.' It is equally likely that the legislature has failed to enact the proposed amendment because it recognized, as we hold today, that the predicate felony statutes already unambiguously require sentencing courts to look to the date of the original sentence.") (quoting <u>Flanagan v. Mount Eden Gen. Hosp.</u>, 24 N.Y.2d 427, 433, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969); and citing <u>People v. Ocasio</u>, 28 N.Y.3d 178, 183 n.2, 65 N.E.3d 1263 (2016)). In sum, while it is possible that the New York Court of Appeals would give weight to the legislature's decision not to enact the twice-proposed definition of marital status to include "marital status of a person in relation to another person," this possibility does not constitute "persuasive evidence" that it would necessarily do so.

**\*13** Given the City Council's clearly expressed intent to expand the boundaries of the NYCHRL to show "no tolerance for discrimination in public life," Comm. Rept. of the Govt. Affairs Div., Comm. on Civ. Rights at 8 (Mar. 8, 2016), this Court cannot find that the <u>Morse</u> court's interpretation of "marital status" as used in the NYCHRL would necessarily be rejected by the New York Court of Appeals.

### 3. Defendants' Arguments Regarding Construction of the NYCHRL

While Defendants acknowledge that this Court is obligated "to construe the NYCHRL broadly in favor of the plaintiff," and that the NYCHRL "includes a liberal construction requirement," they contend that these factors do not justify the <u>Morse</u> court's interpretation of "marital status." (Def. Br. (Dkt. No. 32) at 18)

In this regard, Defendants argue that

[t]he Second Circuit's approach in <u>Beason v. United Technologies Corp.</u>, 337 F.3d 271, 282 (2d Cir. 2003) is instructive relative to refuting <u>Morse</u>'s and Plaintiff's purported reliance on liberal construction. There, the Second Circuit refused to construe Connecticut's anti-discrimination statute to cover discrimination against "perceived" physical disability, where the legislature "could have expressly adopted a cause of action for" such discrimination, but declined to do so. <u>Id.</u> at 280. Despite the general rule that such "remedial statutes should be

construed liberally," the Court rightly refused to recognize a protected category that the legislature did not itself include in the statute. Id. at 282. Here, the legislative history behind the Act compels the same result because the NYC Council twice considered the expanded definition of "marital status" and rejected it before the Morse court rendered its decision.

(Id. at 18) Beason is of no assistance to Defendants.

As an initial matter – and unlike in the instant case – there were no on-point state appellate court decision in Beason. See Beason, 337 F.3d at 281 ("In light of [the] scant precedent premised entirely on a single state trial court opinion we are not persuaded that our analysis is wrong."). And while the Connecticut Supreme Court generally "interprets remedial statutes 'liberally in order to effectuate the legislature's intent,' " Beason, 337 F.3d at 271 (quoting Comm'n on Human Rights & Opportunities v. Sullivan Assocs., 250 Conn. 763, 782, 739 A.2d 238 (1999)), the NYCHRL is not a typical remedial statute. Contained in the text of the NYCHRL itself is a strikingly broad directive regarding construction – that the NYCHRL "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin Code § 8-130(a). Finally, Connecticut's general assembly had "introduced the element of [perceived status into other provisions of] the state's anti-discrimination laws," but did not include this concept in its statute regarding discrimination on the basis of physical disability. The statutory scheme as a whole thus indicated that the general assembly intended to exclude perceived physical disability from the definition of physical disability. Beason, 337 F.3d at 280 (citing Conn. Gen. Stat. § 46a-81a(a) (discrimination on the basis of perceived sexuality), and § 46a-51(20) (discrimination on the basis of perceived mental disability)). Defendants have cited no such comparator in the NYCHRL – i.e., another protected status that, unlike marital status, is defined to include status with respect to another person.

 **\*14** Defendants go on to argue that "the NYC Council selected two relationship categories to receive protection under the NYCHRL and the [Restoration] Act – 'marital status' and 'partnership status,' " with the latter term defined as "the status of being in a domestic partnership." N.Y.C. Admin. Code § 8-102. According to Defendants, "[n]o general rule of liberal construction can override those specific

categories and add a new relationship status to the NYCHRL – especially a relationship status that the NYC Council considered and omitted." (Def. Br. (Dkt. No. 32) at 19 (emphasis in original)) And "the definitions of other protected 'statuses' in the statute confirm that th[e] term 'status' refers to a category or characteristic – not one's relationship with a particular person." (Def. Reply Br. (Dkt. No. 34) at 9)

That the NYCHRL defines "partnership status" as "the status of being in a domestic partnership," but does not so define "marital status," undermines rather than supports Defendants' argument here, however. "It is well established that '[w]here [a legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally.' " Ziparo v. CSX Transportation, Inc., 15 F.4th 153, 161 (2d Cir. 2021) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) (brackets in Ziparo). Courts may not "violate that principle by declining to give any effect to the conspicuous omission of [limiting] language from [one] provision." Id. Accordingly, this Court will not read the NYCHRL's restrictive definition of "partnership status" into the term "marital status."

Defendants also argue that although "courts must 'constru[e] the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible' " ... [i]t [would] ... not [be] reasonable to apply a liberal construction of the Act that would have the effect of adopting the very definition of 'marital status' that the NYC Council considered and rejected." (Def. Br. (Dkt. No. 32) at 18 (quoting Mihalik, 715 F.3d at 109) (in turn quoting Albunio, 16 N.Y.3d at 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135)) For the reasons discussed above, however, the legislative history cited by Defendants does not demonstrate that the New York Court of Appeals would necessarily reject Morse's interpretation of the NYCHRL's "marital status" provision as "unreasonable." [4]

 **\*15** In sum, Defendants' arguments regarding limitations on the NYCHRL's "liberal construction" provision do not constitute "persuasive evidence" that Morse was wrongly decided.

### 4. Defendants' Arguments Regarding Anti-Nepotism Policies

Finally, Defendants argue that "before adopting Morse's definition of marital status, this Court should consider the consequences of such a sweeping definition. In particular, this definition would render virtually all anti-nepotism policies adopted by NYC employers illegal under the NYCHRL." (Def. Br. (Dkt. No. 32) at 19)

In support of this argument, Defendants point out that Intro 22 provided that (1) "[t]he term 'marital status' refers both to the marital status of a person in isolation, and to the marital status of a person in relation to another person"; and (2) "[t]he provisions of this section as they relate to discrimination on the basis of marital status shall not be construed to prohibit an anti-nepotism policy where such a policy is not a subterfuge to evade the purposes of this chapter." N.Y. City Council, Comm. on Gen. Welfare, Int. No. 22 ("Intro 22") §§ 2-3 (Sept. 22, 2004) (available at Dkt. No. 33-2). Defendants contend that this "legislative history clearly reveals that the NYC Council considered the anti-nepotism issue when it proposed the 2003 and 2004 amendments," and that the Restoration Act "avoided this concern" by not enacting Intro 22's proposed definition of "marital status." (Def. Br. (Dkt. No. 32) at 19-20) Defendants further cite Cerullo, the 2010 ALJ decision discussed above, which adopts Defendants' proposed definition of "marital status" in part to avoid casting doubt on anti-nepotism policies. (Id. at 20-21, 104 S.Ct. 296 (citing Cerullo, 2010 NY OATH LEXIS 428, at *15-16))

The instant case involves no anti-nepotism policy, however, and the generalized policy concern cited by Defendants does not permit this Court to disregard a First Department decision that is squarely on point. And Defendants' reliance on an ALJ decision for an issue of statutory interpretation is misplaced, for the reasons discussed in Morse. See Morse, 165 F.3d at 70 ("[An] ALJ decision is not entitled to deference by courts. '[W]here the question is one of pure statutory reading and analysis, ... there is little basis to rely on any special

competence or expertise of the administrative agency,' and 'courts are free to ascertain the proper interpretation from the statutory language and legislative intent.' ") (quoting Smith, 61 A.D.3d at 508-509, 878 N.Y.S.2d 675).

* * * *

Defendants have not proffered "persuasive evidence" that the New York Court of Appeals would reject the First Department's reasoning in Morse. This Court is therefore constrained to follow Morse's ruling that, under the NYCHRL, " '[m]arital status' may refer to ... whether two individuals are married to each other or not married to each other." Morse, 165 A.D.3d at 68. Given Hunter's allegation that he was terminated because of his impending divorce from Wendy Williams – i.e., terminated because he would no longer be married to Williams – Morse requires this Court to find that he has stated a claim for marital status discrimination under the NYCHRL. [5]

## CONCLUSION

**\*16** For the reasons stated above, Defendants' motion to dismiss is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 31). The Court will conduct a conference, pursuant to Rule 16 of the Federal Rules of Civil Procedure, on **September 14, 2023 at 10:30 a.m.** in Courtroom 705 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York. The parties should consult this Court's individual rules of practice and submit a joint letter and proposed case management plan one week prior to the conference.

**All Citations**

Slip Copy, 2023 WL 5671527

## Footnotes

1   The Court's factual account is drawn from the Second Amended Complaint ("SAC"). The SAC's factual allegations are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

2   Although Plaintiff uses the first name "Kelvin" in the caption of the Complaint, it appears from this April 18, 2019 notice and other materials that he also uses the name "Kevin." See, e.g., David Marchese, Talk: Wendy

*Williams Wants to Be the Realest in the Game*, N.Y. Times Magazine (Aug. 26, 2019) (Wendy Williams referring to Plaintiff as "Kevin" in an interview), available at https://nyti.ms/3eg3Y2O.

3    The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

4    Defendants cite <u>Chauca v. Abraham</u>, 30 N.Y.3d 325, 89 N.E.3d 475 (2017), and <u>Doe v. Bloomberg L.P.</u>, 36 N.Y.3d 450, 167 N.E.3d 454 (2021), for the proposition that "the NYCHRL must be interpreted <u>reasonably</u>, including by construing terms of art consistently with their common-law meanings, use in analogous statutes, and the language of the NYCHRL as a whole." (Def. Reply Br. (Dkt. No. 34) at 11-13 (emphasis in original)) These cases reject as "unreasonable" interpretations of the NYCHRL that contradict the common law and/or the text and structure of the statute. <u>See</u> <u>Chauca</u>, 30 N.Y.3d at 331, 89 N.E.3d 475 (holding that, under the NYCHRL, a plaintiff is not "entitled to a punitive damages charge upon any showing of liability"; and citing, <u>inter alia</u>, tort and insurance cases for the proposition that " 'punitive damages' ... is a legal term of art that has meaning under the New York common law") (emphasis in original); <u>Bloomberg</u>, 36 N.Y.3d at 453, 460-61, 167 N.E.3d 454 (rejecting plaintiff's argument that a company's "Co-Founder, Chief Executive Officer, and President" "was her 'employer' and as a result was subject to vicarious liability under the [NYCHRL]"; noting that "employees and agents of a company" and "shareholders" are not "understood to be 'employers' " or "subject to vicarious liability" at common law; noting that multiple provisions of the NYCHRL differentiate – explicitly or implicitly – among companies and their agents and/or owners).

Here, by contrast, Defendants have demonstrated no inconsistency between (1) the <u>Morse</u> court's interpretation of "marital status" and (2) the use of "marital status" in the common law, "analogous statutes," and/or "the NYCHRL as a whole." While Defendants argue that "the definition of 'marital status' as a term of art has been well established," they cite only to New York State Human Rights Law ("NYSHRL") cases and to a case involving a Federal employment regulation that is interpreted by reference to Title VII. (Def. Reply Br. (Dkt. No. 34) at 12-13) It is well established, however, that the NYCHRL is not to be interpreted in accordance with cases brought under the Title VII and the NYSHRL; indeed, the NYCHRL explicitly says as much. <u>See</u> N.Y.C. Admin. Code § 8-130(a).

5    This Court's conclusion that Defendants have not satisfied the "persuasive evidence" standard does not mean that this Court agrees with <u>Morse</u>'s interpretation of "marital status" as used in the NYCHRL. Indeed, <u>Morse</u>'s definition of "marital status" is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of <u>Levin</u>; or (4) the broader legislative history of the Restoration Act.

As to the ordinary meaning of "marital status," Black's Law Dictionary – which the New York Court of Appeals has recently cited in a NYCHRL case, <u>see</u> <u>Bloomberg</u>, 36 N.Y.3d at 360, 165 N.E.3d 180 – defines that term as "[t]he condition of being single, married, legally separated, divorced, or widowed." <u>Marital Status</u>, Black's Law Dictionary (11th ed. 2019). This meaning accords with the use of the term in everyday speech. <u>See</u> <u>Manhattan Pizza Hut</u>, 51 N.Y.2d at 511-12, 434 N.Y.S.2d 961, 415 N.E.2d 950 ("when one is queried about one's 'marital status,' the usual and complete answer would be expected to be a choice among 'married,' 'single,' etc., but would not be expected to include an identification of one's present or former spouse....").

As to the NYCHRL's legislative purpose, the opening provision of that statute states that "there is no greater danger to the health, morals, safety and welfare of the [City of New York] and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on ... marital status [or] partnership status." N.Y.C. Admin. Code § 8-101. The NYCHRL – like other anti-discrimination laws – is thus focused on discriminatory animus directed at particular groups or classes of people. <u>See</u> <u>Discrimination</u>, Black's Law Dictionary (11th ed. 2019) (defining

"discrimination" as "[t]he effect of a law or established practice that confers privileges on a certain class or that denies privileges to a certain class").

As to the Restoration Act's treatment of Levin, Morse misconstrues which portions of Levin were abrogated by the Restoration Act and why. In Levin, plaintiffs were unmarried lesbians. Plaintiffs and their partners had been denied medical student housing at Yeshiva University's Albert Einstein College of Medicine. The university restricted housing to married couples and their children. Levin, 96 N. Y.2d at 489-90, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Plaintiffs sued the university for marital status discrimination in violation of, inter alia, the NYCHRL. The New York Court of Appeals rejected the claim, finding that the university's "policy did not discriminate on the basis of marital status on its face ..., but instead validly limited occupancy to only those in a legal, family relationship with [a medical student]." Id. at 490-91, 730 N.Y.S.2d 15, 754 N.E.2d 1099.

In sum, the plaintiffs in Levin – unlike the plaintiffs here and in Morse – did not claim that they were subject to discrimination because of the identity of their partner or spouse. Instead, plaintiffs complained that the university had denied them housing pursuant to a policy excluding unmarried couples, and it was this policy that the Levin plaintiffs argued violated their right to be free from marital status discrimination. And that is the argument the Levin court rejected in stating that "a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationship – or absence thereof – with another person." Id. at 490, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Levin says nothing about discrimination premised on the individual to whom someone is or is not married.

The Restoration Act abrogates Levin to the extent that it adds "partnership status" as a protected status under the NYCHRL, and to the extent that the Act's liberal construction provision is inconsistent with Levin's reasoning. But Morse errs in concluding that the City Council's abrogation of Levin implies an intent to create a cause of action for marital status discrimination based on the identity of the complainant's spouse. As discussed above, the identity of the spouse or partner was irrelevant in Levin; the case turned on the fact that the Levin plaintiffs were not married.

Finally, as to the Restoration Act's broader legislative history, Defendants accurately point out that (1) two prior drafts of the Restoration Act contained language defining "marital status" to include "the marital status of a person in relation to another person" (N.Y. City Council, Comm. on Gen. Welfare, Int. No. 439 (Apr. 30, 2003)), and Int. No. 22 (Sept. 22, 2004); and (2) that language does not appear in the legislation as enacted. While this Court has concluded that this argument does not amount to "persuasive evidence" that the New York Court of Appeals would overturn Morse, Defendants' argument is not without force.

Morse cannot be disregarded by this Court simply because of a concern about its reasoning, however. This Court must instead find that there is "persuasive evidence" that the New York Court of Appeals would reject the First Department's reasoning, and that is a standard that Defendants have not met.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

2024 WL 64768

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

KELVIN HUNTER, Plaintiff,

v.

DEBMAR-MERCURY LLC, IRA BERNSTEIN,
MORT MARCUS, and JOHN and JANE DOE 1-5
(Employees of Defendant DEBMAR-MERCURY
LLC, and/or corporations/subsidiaries of **DEBMAR-
MERCURY LLC** not yet known), Defendants.

22 Civ. 1687 (PGG)

|

Filed 01/05/2024

### ORDER

Paul G. Gardephe United States District Judge

 **\*1**  On September 1, 2023, this Court issued a Memorandum
Opinion & Order denying Defendants' Fed. R. Civ. P. 12(b)
(6) motion to dismiss. Hunter v. Debmar-Mercury LLC,
No. 22 Civ. 1687 (PGG), 2023 WL 5671527 (S.D.N.Y.
Sept. 1, 2023). Defendants now move for certification of
the Memorandum Opinion & Order for interlocutory appeal
pursuant to 28 U.S.C. § 1292(b) and for a stay of the
proceedings pending the outcome of the appeal. (Dkt. No.
47) Plaintiff Kelvin Hunter opposes both motions. (Dkt. No.
49) For the reasons stated below, Defendants' motion for
certification and application for a stay will be granted.

### BACKGROUND [1]

Plaintiff Hunter was the executive producer of The Wendy
Williams Show, a daytime television program, from the
show's inception in 2008 until his termination in April 2019.
(Hunter, 2023 WL 5671527, at *1) Plaintiff is also the ex-
husband of the show's host, Wendy Williams. (Id.) Plaintiff
alleges that on April 11, 2019, he was served with notice
that his then-wife, Wendy Williams, had filed for divorce.
(Id. (quoting Cmplt. (Dkt. No. 1) ¶ 33)) On April 18, 2019,
Defendant Bernstein – co-president of Debmar-Mercury, the
company that produces The Wendy Williams Show – notified
Plaintiff that his employment was terminated. (Id. at *1-2)

The Complaint was filed on March 1, 2022, and asserts a
claim for unlawful termination under the New York City
Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code
§ 8-107(1)(a). (Cmplt. (Dkt. No. 1) ¶¶ 48-60). Plaintiff
contends that he "was terminated solely because of his marital
status [vis-à-vis] the Show's host," and that this "conduct ...
constitutes a clear violation of Hunter's statutory rights [under
the NYCHRL] to be free of employment discrimination on
the basis of marital status." (Id. ¶¶ 53, 59)

Defendants moved to dismiss pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure on September 7,
2022. (Dkt. No. 31) In their motion, Defendants contend
that the NYCHRL's prohibition against marital status
discrimination "does not cover a person's marriage to a
particular individual." (Def. MTD Br. (Dkt. No. 32) at 1)
Plaintiff filed his opposition on October 7, 2022. (Dkt. No. 35)

On September 1, 2023, this Court issued a Memorandum
Opinion & Order denying Defendants' motion to dismiss.
(Hunter, 2023 WL 5671527) In the opinion, this Court
explains that whether Plaintiff states a claim depends on the
interpretation of "marital status" as used in the NYCHRL §
8-107(1)(a). (Id. at *4) If the NYCHRL's prohibition against
marital status discrimination extends only to claims based on
the fact that a person is married or unmarried, Plaintiff has
not stated a claim. If the statute extends to claims based on
a plaintiff's marriage to a particular person – here, Plaintiff's
marital status vis-à-vis Wendy Williams – then Plaintiff has
stated a claim. (Id.)

 **\*2**  With respect to this issue of statutory interpretation, this
Court concluded that, pursuant to Erie R. Co. v. Tompkins,
304 U.S. 64 (1938) and its progeny, it was "constrained
to follow" a decision of the First Department in Morse v.
Fidessa Corp., 165 A.D.3d 61 (1st Dep't 2018). (Id. at *15) In
Morse, the First Department ruled that, under the NYCHRL,
"" '[m]arital status' may refer to ... whether two individuals
are married to each other or not married to each other.' " (Id.
(quoting Morse, 165 A.D.3d at 68)) Because Defendants had
not offered "persuasive evidence" that the New York Court
of Appeals would overrule Morse, this Court is bound by that
decision. (Id.)

The Court expressed doubt that Morse was correctly decided,
however:

This Court's conclusion that Defendants have not satisfied the "persuasive evidence" standard does not mean that this Court agrees with Morse's interpretation of "marital status" as used in the NYCHRL. Indeed, Morse's definition of "marital status" is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of Levin [v. Yeshiva Univ., 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001)]; or (4) the broader legislative history of the Restoration Act.

(Id. at 15 n.5) While this Court disagreed with the First Department's analysis in Morse, it ultimately determined that "Morse cannot be disregarded ... simply because of a concern about its reasoning." (Id.)

On November 17, 2023, Defendants filed the instant motion seeking certification of the Memorandum Opinion & Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants also seek a stay pending resolution of the appeal. (Dkt. No. 47) Plaintiff opposes both requests. (Pltf. Opp. (Dkt. No. 49) at 1)

## DISCUSSION

### I. CERTIFICATION OF INTERLOCUTORY APPEALS

#### A. Legal Standard

28 U.S.C. § 1292(b) authorizes a district court to certify an order for interlocutory appeal where the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." "The moving party has the burden of establishing all three elements." Segedie v. The Hain Celestial Grp., Inc., No. L 4-CV-5029 NSR, 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015). "Even when the statutory criteria are met, [however,] '[d]istrict court judges have broad discretion to deny certification.' " Id. (quoting

Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)).

Certification for interlocutory appeal should be "strictly limited," because only " 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (brackets in original) (quoting Klinghoffer v. S.N.C. Achille Laura, 921 F.2d 21, 25 (2d Cir. 1990)). But "[w]hen a ruling satisfies [the § 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.' " Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009)).

### II. ANALYSIS OF STATUTORY FACTORS

#### A. Controlling Question of Law

As to the first statutory factor, "a question of law is 'controlling' if reversal of the district court's order would terminate the action." Klinghoffer, 921 F.2d at 25. "A question of law can also be controlling if reversal of the district court's order 'could significantly affect the conduct of the action' or if 'the certified issue has precedential value for a large number of cases.' " Tantaros v. Fox News Network, LLC, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quoting Glatt v. Fox Searchlight Pictures Inc., No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)). The question of law "must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." Capitol Recs., LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quotation marks omitted).

**\*3** As discussed above, Defendants' motion to dismiss turns on "the definition of 'marital status' in the NYCHRL [and whether that term] includes an employee's marital status in relation to another person." Hunter, 2023 WL 5671527, at \*4. Plaintiff agrees that "the definition of 'marital status' under the NYCHRL is a pure question of statutory interpretation and that a reversal of this Court's opinion would result in dismissal of the action." (Pltf. Opp. (Dkt. No. 49) at 4). Accordingly, the first statutory element is satisfied.

#### B. Substantial Ground for Difference of Opinion

There is "substantial ground for difference of opinion" under Section 1292(b) where "(1) there is conflicting authority on

the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." In re Enron Corp., No. 01-16034, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (quotation marks omitted). It is not sufficient to show "the mere presence of a disputed issue that is a question of first impression," Flor, 79 F.3d at 284, nor is it enough to show the "possibility of a different outcome on appeal." Segedie, 2015 WL 5916002, at *3. Instead, there must be "substantial doubt that the district court's order was correct." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-CV-15375KMK, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (quotation marks omitted). Ultimately, "[i]t is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." Flor, 79 F.3d at 284 (quotation marks and citation omitted).

Defendants argue that there is "substantial ground for difference of opinion" as to whether "marital status" – as used in the NYCHRL § 8-107 – includes an employee's marital status in relation to another person. (Def. Br. (Dkt. No. 48) at 6-7)

In the September 1, 2023 Memorandum Opinion & Order, this Court discussed at length why it disagrees with Morse's conclusion that "marital status" includes an employee's marital status vis a vis a particular person:

> This Court's conclusion that Defendants have not satisfied the "persuasive evidence" standard does not mean that this Court agrees with Morse's interpretation of "marital status" as used in the NYCHRL. Indeed, Morse's definition of "marital status" is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of Levin [v. Yeshiva Univ., 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001)]; or (4) the broader legislative history of the Restoration Act.

> As to the ordinary meaning of "marital status," Black's Law Dictionary – which the New York Court of Appeals has recently cited in a NYCHRL case, see Bloomberg, 36 N.Y.3d at 360, 165 N.E.3d 180 – defines that term as "[t]he condition of being single, married, legally separated, divorced, or widowed." Marital Status, Black's Law Dictionary (11th ed. 2019). This meaning accords with the use of the term in everyday speech. See Manhattan Pizza Hut, 51 N.Y.2d at 511-12, 434 N.Y.S.2d 961, 415 N.E.2d 950 ("when one is queried about one's 'marital status,' the usual and complete answer would be expected

to be a choice among 'married,' 'single,' etc., but would not be expected to include an identification of one's present or former spouse ....").

As to the NYCHRL's legislative purpose, the opening provision of that statute states that "there is no greater danger to the health, morals, safety and welfare of the [City of New York] and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on ... marital status [or] partnership status." N.Y.C. Admin. Code § 8-101. The NYCHRL – like other anti-discrimination laws – is thus focused on discriminatory animus directed at particular groups or classes of people. See Discrimination, Black's Law Dictionary (11th ed. 2019) (defining "discrimination" as "[t]he effect of a law or established practice that confers privileges on a certain class or that denies privileges to a certain class").

**\*4** As to the Restoration Act's treatment of Levin, Morse misconstrues which portions of Levin were abrogated by the Restoration Act and why. In Levin, plaintiffs were unmarried lesbians. Plaintiffs and their partners had been denied medical student housing at Yeshiva University's Albert Einstein College of Medicine. The university restricted housing to married couples and their children. Levin, 96 N.Y.2d at 489-90, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Plaintiffs sued the university for marital status discrimination in violation of, inter alia, the NYCHRL. The New York Court of Appeals rejected the claim, finding that the university's "policy did not discriminate on the basis of marital status on its face ..., but instead validly limited occupancy to only those in a legal, family relationship with [a medical student]." Id. at 490-91, 730 N.Y.S.2d 15, 754 N.E.2d 1099.

In sum, the plaintiffs in Levin – unlike the plaintiffs here and in Morse – did not claim that they were subject to discrimination because of the identity of their partner or spouse. Instead, plaintiffs complained that the university had denied them housing pursuant to a policy excluding unmarried couples, and it was this policy that the Levin plaintiffs argued violated their right to be free from marital status discrimination. And that is the argument the Levin court rejected in stating that "a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationship – or absence thereof – with another person." Id. at 490, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Levin says nothing

about discrimination premised on the individual to whom someone is or is not married.

The Restoration Act abrogates <u>Levin</u> to the extent that it adds "partnership status" as a protected status under the NYCHRL, and to the extent that the Act's liberal construction provision is inconsistent with <u>Levin</u>'s reasoning. But <u>Morse</u> errs in concluding that the City Council's abrogation of <u>Levin</u> implies an intent to create a cause of action for marital status discrimination based on the identity of the complainant's spouse. As discussed above, the identity of the spouse or partner was irrelevant in <u>Levin</u>; the case turned on the fact that the <u>Levin</u> plaintiffs were not married.

Finally, as to the Restoration Act's broader legislative history, Defendants accurately point out that (1) two prior drafts of the Restoration Act contained language defining "marital status" to include "the marital status of a person in relation to another person" (N.Y. City Council, Comm. on Gen. Welfare, Int. No. 439 (Apr. 30, 2003)), and Int. No. 22 (Sept. 22, 2004); and (2) that language does not appear in the legislation as enacted. While this Court has concluded that this argument does not amount to "persuasive evidence" that the New York Court of Appeals would overturn <u>Morse</u>, Defendants' argument is not without force.

(<u>Hunter</u>, 2023 WL 5671527, at *15 n.5)

Defendants repeat these arguments in their briefing, and note that the issue presented is one "of first impression for the Second Circuit and the New York Court of Appeals." (Def. Br. (Dkt. No. 48) at 6-10).

Citing <u>Hermes Int'l v. Rothschild</u>, 590 F. Supp. 3d 647 (S.D.N.Y. 2022), however, Plaintiff counters that Defendants have not shown the existence of "significant disagreement <u>between courts</u>," specifically, as to the interpretation of "marital status" in the NYCHRL. (Pltf. Opp. (Dkt. No. 49) at 5 (emphasis in Pltf. Opp.) (quoting <u>Hermès</u>, 590 F. Supp. 3d at 654) Plaintiff points out that Defendants have cited only two cases that run contrary to <u>Morse</u> – <u>Christoforou v. Cadman Plaza North, Inc.</u>, No. 04 CV 08403(KMW), 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009), and <u>Gokhberg v. PNC Bank, N.A.</u>, No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021) – and that both cases rely on <u>Levin</u>, do not cite <u>Morse</u>, and do not address – as <u>Morse</u> does – the impact of the 2016 Restoration Act on the NYCHRL. (<u>Id.</u> at 5-6) Given these circumstances, Plaintiff argues that these

cases constitute a weak basis on which to find "significant disagreement between courts" about the proper interpretation of "marital status" under the NYCHRL. (<u>Id.</u>)

**\*5** Section 1292(b) does not require a "significant disagreement between courts" as a prerequisite for certification, however. <u>See</u> 28 U.S.C. § 1292(b) (permitting interlocutory appeal where "there is substantial ground for difference of opinion"). And courts in this District have held that this element is satisfied when there is either " 'conflicting authority on the issue' " or when " 'the issue is particularly difficult and of first impression for the Second Circuit.' " <u>Enron</u>, 2007 WL 2780394, at *1 (quoting <u>In re Lloyd's Am. Tr. Fund Litig.</u>, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)); <u>see Tantaros</u>, 465 F. Supp. 3d at 392 & n.6 (S.D.N.Y. 2020) (granting certification where issue was a "matter of first impression in this Circuit," involved a "complex ... interpretation of a novel issue of state law" that was "subject to legitimate dispute," and had not been addressed by any federal decision).

Here, for the reasons explained in the September 1, 2023 Memorandum Opinion & Order, there is "substantial ground for difference of opinion"; there is conflicting case law; and the issue is one of first impression in the Second Circuit and in the New York Court of Appeals. Accordingly, the second statutory element is satisfied.

### C. Whether Appeal Would Advance the Ultimate Termination of the Litigation

Under the third prong of Section 1296(b), a court granting certification must find that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This factor is "closely connected to the question of whether the appeal involves a controlling question of law," <u>In re 650 Fifth Ave.</u>, No. 1:08-CV-10934-RJH, 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012), and is one on which courts place "particular weight." <u>Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New York City Transit Auth.</u>, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005). "[I]n evaluating this factor, courts must consider the institutional efficiency of both the district court and the appellate court." <u>Tocco v. Real Time Resols., Inc.</u>, No. 14CV810, 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015).

Reversal of this Court's Memorandum Opinion & Order would end this case in its entirety and would thus "advance the ultimate termination of the litigation." <u>See Tantaros</u>, 465 F. Supp. 3d at 392 (granting certification under Section 1292(b)

where reversal of the court's order "would end [the] case" by depriving the court of subject matter jurisdiction); Montefiore Med. Ctr. v. Teamsters Loc. 272, No. 09 CIV. 3096 (HB), 2009 WL 3787209, at *6-7 (S.D.N.Y. Nov. 12, 2009), aff'd, 642 F.3d 321 (2d Cir. 2011) (granting certification where "the governing issue is subject matter jurisdiction and to proceed may result in a decision that the Court lacked subject matter jurisdiction").

Citing Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co., No. 19 CIV. 10067 (PAE), 2023 WL 4249356 (S.D.N.Y. June 29, 2023), and In re S. Afr. Apartheid Litig., 624 F. Supp. 2d 336 (S.D.N.Y. 2009), however, Plaintiff argues that certification is inappropriate where a case is "at an early stage of discovery" and when "interlocutory appeal would 'materially delay' the progress of the litigation." (Pltf. Opp. (Dkt. No. 49) at 13)

Altimeo and In re S. Afr. Apartheid Litig. involve very different circumstances than those present here, however. In Altimeo, plaintiffs moved for certification of an order that dismissed the claims of "tenderer shareholders" but upheld the claims of "seller shareholders." Altimeo, 2023 WL 4249356 at * 1. The court found that the interlocutory appeal plaintiffs sought "would materially delay the forward progress of the claims of the seller shareholders, as it does not make good sense to commence discovery as to such plaintiffs while the tenderer shareholders' appeal pends." Id. at 19. Here, by contrast, there is one plaintiff and a single cause of action. (Cmplt. (Dkt. No. 1)) There is therefore no risk of unduly delaying discovery as to certain claims while an appeal is pending concerning other claims.

 *6  In re South African Apartheid Litigation involved actions that had been "pending for seven years without any discovery." Moreover, "most of the conduct at issue ... occurred over 20 years [earlier]," raising serious concerns regarding fading memories and loss of evidence. In re S. Afr. Apartheid Litig., 624 F. Supp. 2d at 342. Here, the Complaint was filed in 2022, and much of the underlying conduct took place in 2019. (Cmplt. (Dkt. No. 1) ¶¶ 32-34)

The Court concludes that the third statutory element is satisfied.

* * * *

Having considered the three statutory factors, this Court concludes that they favor certifying an interlocutory appeal.

III. **WHETHER THE INTERPRETATION OF "MARITAL STATUS" UNDER THE NYCHRL CONSTITUTES AN APPROPRIATE ISSUE FOR A CERTIFIED QUESTION TO THE NEW YORK COURT OF APPEALS**

Defendants argue that an interlocutory appeal would be appropriate here so that the Second Circuit could certify to the New York Court of Appeals the question whether "marital status" – as used in the NYCHRL – extends to an employee's marital status in relation to another person. (Def. Br. (Dkt. No. 48) at 14) Plaintiff contends that this issue is not appropriate for purposes of a certified question to the New York Court of Appeals, and that accordingly any interlocutory appeal would be futile. (Pltf. Opp. (Dkt. No. 49) at 13-16)

Under New York law, the Second Circuit may certify questions to the New York Court of Appeals where "determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the [New York] Court of Appeals exists." 22 N.Y.C.R.R. § 500.27(a). In deciding whether to certify a question to the New York Court of Appeals, the Second Circuit considers: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007).

As to the first factor, the parties agree that the New York Court of Appeals has not addressed whether "marital status" – as used in the NYCHRL – includes an employee's marital status vis-à-vis another person. (Def. Br. (Dkt. No. 48) at 15; Pltf. Opp. (Dkt. No. 49) at 14) While the First Department addressed this issue in Morse, the Second Circuit has previously certified questions to the New York Court of Appeals despite the existence of intermediate New York appellate court decisions addressing similar issues. See City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 123-24, 126 (2d Cir. 2010) (certifying questions related to the taxation of cigarettes on Indian reservations despite the existence of two non-conflicting Fourth Department decisions addressing similar issues); see also Zakrzewska v. New School, 574 F.3d 24, 28 & n.4 (2d Cir. 2009) (certifying question related to the availability of an affirmative defense under the NYCHRL where a First Department decision "suggested that the ... defense is not available"). In sum, the absence of an authoritative state court decision suggests that a certified question to the New York Court of Appeals would be appropriate.

As to the second factor, the parties acknowledge that the NYCHRL governs the rights of millions of New York City employees. (Pltf. Opp. (Dkt. No. 49) at 15; Def. Reply (Dkt. No. 50) at 8) Resolution of the disputed issue here would determine the viability of a NYCHRL claim premised on an employee's "marital status" vis-à-vis another person. The Second Circuit has on multiple occasions found that disputes about the scope of various provisions in the NYCHRL merit a certified question to the New York Court of Appeals. Makinen v. City of New York, 857 F.3d 491, 495-97 (2d Cir. 2017) (certifying question as to whether the NYCHRL "preclude[s] a plaintiff from bringing a disability discrimination claim based solely on a perception of untreated alcoholism" given, inter alia, the 2005 Restoration Act's liberal construction provision); Chauca v. Abraham, 841 F.3d 86, 94-95 (2d Cir. 2016) (certifying question as to the "standard for finding a defendant liable for punitive damages" under the NYCHRL in light of the 2005 and 2016 Restoration Acts); Syeed v. Bloomberg L.P., 58 F.4th 64, 71 (2d Cir. 2023) (certifying question as to "[w]hether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the [NYCHRL] or the New York State Human Rights Law if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-based job opportunity on discriminatory grounds"). The importance and nature of the disputed issue thus suggests that a certified question would be appropriate.

**\*7** As to the third factor – "the capacity of certification to resolve the litigation" – Plaintiff does not dispute that a certified question to the New York Court of Appeals could resolve the parties' dispute. (Pltf. Opp. (Dkt. No. 49) at 14-16)

This Court concludes that the proper interpretation of "marital status" – as used in the NYCHRL – presents a sufficiently plausible candidate for a certified question that an interlocutory appeal cannot be deemed futile. Because the statutory factors discussed above favor certification of an interlocutory appeal, Defendants' motion for certification of an interlocutory appeal will be granted.

## IV. APPLICATION FOR A STAY PENDING APPEAL

Defendants ask this Court to stay the proceedings pending the Second Circuit's resolution of the appeal. (Def. Br. (Dkt. No. 48) at 20) Plaintiff asks the Court to either deny the stay application outright or to "stay only the trial and not discovery." (Pltf. Opp. (Dkt. No. 49) at 18)

In deciding whether to stay a case pending an interlocutory appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.' " Id. (quotation marks omitted; brackets in original) (quoting Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006)).

As to likelihood of success on the merits – for the reasons discussed above – this Court has concluded that (1) "marital status" as used in the NYCHRL does not encompasses an employee's marital status in relation to another person; and (2) the meaning of this term under the NYCHRL presents a plausible candidate for a certified question. This factor thus weighs in favor of a stay.

As to irreparable injury absent a stay, Defendants have made no such showing. Defendants acknowledge that "the mere expenditure of resources in discovery is generally found not to constitute irreparable harm." (Def. Br. (Dkt. No. 48) at 22); see Blanchard v. Tabulate, Inc., No. 18 CIV. 8631 (ER), 2018 WL 11383043, at \*2 (S.D.N.Y. Oct. 22, 2018) (" 'Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.' " (quoting Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974)) And while Defendants raise the specter of "reputation[al]" damage because of Plaintiff's occasional contact with the media regarding this case (see Def. Br. (Dkt. No. 48) at 22), Defendants' allegations of potential reputational harm are "remote [and] speculative." Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 37 (2d Cir. 1995).

Defendants argue, however, that should discovery proceed, Debmar-Mercury could face "the difficult decision as to whether to waive the [attorney-client] privilege" with respect to "an internal investigation into Plaintiff's workplace conduct on The Wendy Williams Show." (Def. Br. (Dkt. No. 48) at 23) But the decision whether to waive privilege is Debmar-Mercury's decision to make, and being forced to make that decision does not constitute irreparable harm. In sum, Defendants have not demonstrated that they will suffer

irreparable injury absent a stay. This factor thus weighs against issuance of a stay.

 **\*8** As to whether issuance of a stay would substantially injure other parties interested in the proceeding, neither side has made a showing as to this factor. Accordingly, this factor is neutral.

As to the public interest, there is – of course – a public interest in the efficient adjudication of this dispute. Moreover, "it is in the public interest ... to stay discovery and all further proceedings" where an appeal "has the potential to resolve [a] case without the need for further discovery." Hymes v. Bank of Am., N.A., No. 18CV2352RRMARL, 2020 WL 9174972, at \*7 (E.D.N.Y. Sept. 29, 2020). Here, the proposed appeal presents a potentially dispositive issue, the resolution of which could resolve the parties' dispute without the need for discovery or additional motion practice. The fourth factor thus weighs in favor of a stay.

Having considered the relevant factors, this Court concludes that they weigh in favor of granting the application for a stay pending appeal.

## CONCLUSION

For the reasons stated above, Defendants' motion for a certificate of appealability pursuant to 28 U.S.C. § 1292(b) is granted. (Dkt. No. 47) This case will be stayed pending resolution of the appeal.

If no application is made to the United States Court of Appeals for the Second Circuit to accept the interlocutory appeal within ten days as set forth in Section 1292(b), or if the Second Circuit should deny any such application, the stay will be automatically lifted.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 64768

## Footnotes

1      A more detailed account of the facts and procedural history of this case can be found in the Court's Memorandum Opinion & Order. (Hunter, 2023 WL 5671527, at \*1-3)

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**On January 16, 2024**

deponent served the within: **PETITION FOR PERMISSION TO APPEAL AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1292(B)**

**upon:**

Abraham George
THE LAW OFFICES OF ABE GEORGE, P.C.
*Attorneys for Respondent*
99 Wall Street, Suite 3404
New York, New York 10005
(212) 498-9803
abegeorgenyc@gmail.com

the address(es) designated by said attorney(s) for that purpose by depositing 1 true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on the 16th day of January, 2024.**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026

**Job# 326764**